THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* EDGAR
BEARDEN, Appellant.

Argued April 8, 1943; decided June 10, 1943.

*Sydney Rosenthal* and *Benjamin J. Jacobson* for appellant.

*Charles P. Sullivan, District Attorney (Henry W. Schober* of counsel), for respondent.

LEWIS, J. The appellant challenges the legal sufficiency of evidence upon which he has been convicted of criminal negligence in the operation of an automobile.

At one-thirty in the morning of January 1, 1941, at the intersection of Skillman Avenue and 47th Street in the Borough of Queens, New York City, two passengers in a taxicab were fatally injured when the cab was overturned by a collision with a private automobile. The identity of the driver of the private car has never been the subject of proof by direct evidence. The defendant stands convicted, however, solely upon circumstantial evidence, under an indictment which charged that, in violation of Penal Law § 1053-a, he " * * * drove an automobile in a reckless or culpably negligent manner, whereby [two persons named therein] were killed * * *." The judgment of conviction was affirmed unanimously at the Appellate Division. The case is here, under section 520, subdivision 3, of the Code of Criminal Procedure, upon a certificate that a question of law is involved which ought to be reviewed by this court.

Such a question of law may be the subject of review by this court whenever a criminal charge against a defendant has been submitted to a jury against the defendant's objection and exception upon evidence which falls below the standard of rebutting the presumption of the defendant's innocence and of proving

his guilt beyond a reasonable doubt. (*People* v. *Gluck,* 188 N. Y. 167, 171, 172; Code Crim. Pro., § 389; and see *People v. Buchalter,* 289 N. Y. 181, 223.) Where, as in the present case, the defendant's conviction rests solely upon circumstantial evidence, we examine the record in the light of the rule that the facts from which the inference of defendant's guilt is drawn must be established with certainty — they must be inconsistent with his innocence and must exclude to a moral certainty every other reasonable hypothesis. (*People* v. *Harris,* 136 N. Y. 423, 429; *People* v. *Razezicz,* 206 N. Y. 249, 272; *People* v. *Giordano,* 213 N. Y. 575, 580; *People* v. *Galbo,* 218 N. Y. 283, 293; *People* v. *Suffern,* 267 N. Y. 115, 127; *People* v. *Lewis,* 275 N. Y. 33, 39.)

Skillman Avenue, to which reference will be made as the " Avenue," is an east-and-west thoroughfare. At the point where the accident occurred 47th Street meets the Avenue from the south forming a T-shaped intersection.

Referring first to the evidence which describes the accident: It appears that at about one-thirty in the morning of January first, a taxicab driven by the People's witness Juilfs was proceeding northerly toward the Avenue along 47th Street. There is no traffic light at that intersection, the traffic on the Avenue being controlled by lights at the intersections next to the east and west, *viz.,* at 46th and 48th Streets respectively. Observing that traffic on the Avenue was " against " him, Juilfs stopped his cab on 47th Street before entering the intersection. When the lights changed he looked to the east and to the west along the Avenue and seeing no car approaching from either direction, he started his cab forward. He had proceeded a distance of twelve feet into the intersection and was turning to his left to go west on the Avenue when the cab was struck on its left rear fender by an automobile which had come from the west. The collision overturned the cab and caused fatal injuries to its two passengers. Juilfs had not seen the car which later struck his cab until it was a distance from him of 150 to 175 feet. It is his testimony that the on-coming car, with its dim headlights " on," was then approaching through a darkened section of the block west of 47th Street. Under conditions prevailing at that point Juilfs could not tell the " make " of the on-coming car — only " the outline " being then visible to him. However he did describe it as a " private car " and he testified that at the

only time he saw it — at a distance 150 to 175 feet from him — it was approaching at a speed of fifty miles an hour. No witness except Juilfs saw the collision and neither Juilfs nor any other witness saw the " private car " or its driver after the cab had overturned. A short time after the accident local police officials who had been assigned to investigate its cause, found on the Avenue within the boundaries of the intersection of 47th Street, a piece of iron and the top of a broken bolt.

As to evidence bearing upon the operation by the defendant of his automobile on the early morning of the accident, it appears that after keeping an engagement at West 57th Street and Ninth Avenue in Manhattan, he drove to his home in the Borough of Queens — a distance of three miles. He left Manhattan a few minutes after midnight, his homeward route being by way of Queensborough Bridge and Skillman Avenue. It is his testimony that as he passed along the Avenue an automobile — which " darted out " from a side street on his side, at an intersection which he was unable to locate — struck the left front fender of his car and went on its way without stopping. The defendant, who had stopped momentarily after the impact, proceeded to his home where he arrived about half an hour after midnight. As to the time of his arrival at his home his testimony is corroborated by his mother and by a woman tenant in the house who had been calling upon his mother.

In support of the judgment of conviction the People point to the defendant's admissions that he operated an automobile along the Avenue about an hour before the time when the fatal accident occurred; that while passing along the Avenue he came into collision with another automobile under circumstances which, it is said, do not differ widely from those depicted by the People's witness Juilfs as descriptive of the collision which caused his cab to overturn. The prosecution contends that these admissions by the defendant, with inferences fairly to be drawn therefrom, constitute evidence properly to be considered by the jury on the question whether it was a car driven by the defendant which collided with Juilfs' taxicab. Upon that subject the People also place emphasis upon evidence of a " smear " of paint which was found on the apron inside the radiator grill of the defendant's car and which, according to the testimony by the People's expert, was of the same consistency

as paint from the front of Juilfs' cab and from its rear fender. The prosecution also stresses testimony by the People's expert that the top of the broken bolt and the piece of iron, found after the accident at the intersection of 47th Street and the Avenue, were from a Chevrolet automobile — that being the make of car which was owned and driven by the defendant on the date of the accident.

Assuming, without deciding, that there was evidence before the jury which was sufficient in law to support a finding that the defendant drove the " private car " which is claimed to have become involved in the fatal accident, we conclude that there was a failure of other proof which was essential to the defendant's conviction under the penal statute which the People have invoked in this case.

The section of the Penal Law under which the defendant was indicted and convicted provides: " § 1053-a. *Criminal negligence in operation of vehicle resulting in death.* A person who operates or drives any vehicle of any kind in a reckless or culpably negligent manner, whereby a human being is killed, is guilty of criminal negligence in the operation of a vehicle resulting in death."

The word " reckless " and the phrase " culpably negligent manner," as employed in the penal statute quoted above connote something more than the slight negligence necessary to support a civil action for damages. Both word and phrase import a disregard by the accused of the consequences of his act — an indifference to the rights of others. (*People* v. *Angelo,* 246 N. Y. 451, 457; *People* v. *Grogan,* 260 N. Y. 138, 144, 145; and see *People* v. *Gardner,* 255 App. Div. 683, 685.)

We find no evidence from which the jury could infer that the manner in which the defendant operated his car as he drove homeward along the Avenue showed a disregard by him of the consequences of his act and an indifference to the rights of others. There is no evidence that the defendant was intoxicated in the slighest degree — all inferences fairly to be drawn from the record being to the contrary. Nor is there evidence that the defendant disregarded a red light as a traffic signal at any point on the Avenue west of the place where the accident occurred. True, there is testimony by Juilfs that when he saw what he described as a " private car " at a distance from his

cab of 150 to 175 feet, the speed of that approaching car was fifty miles an hour. Such a feat of observation, made under the conditions described by Juilfs himself, is one which strains credulity. The weight to be given to that single item of testimony, however, was for the triers of the fact — but even if believed by them it was not enough, without more, to warrant a finding of the defendant's guilt under Penal Law, section 1053-a. (*People* v. *Grogan, supra,* p. 144; *People* v. *Angelo, supra,* p. 457. See, also, *People* v. *Gardner, supra,* p. 687.) Proof of speed under certain conditions may lead to civil liability. In our examination of the record at hand, however, we have given heed to the admonition by Chief Judge CULLEN that — "A distance separates the negligence which renders one criminally liable from that which establishes civil liability." (*People* v. *Rosenheimer,* 209 N. Y. 115, 123; Cf. *Brown* v. *Shyne,* 242 N. Y. 176, 182, 183; *People* v. *Pace,* 220 App. Div. 495, 497.)

The judgments should be reversed and a new trial ordered.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, CONWAY and DESMOND, JJ., concur; FINCH, J., taking no part.

Judgments reversed, etc.