THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* HERMAN E. KREIS, Appellant.

Argued June 1, 1951; decided July 11, 1951.

*Wilfred E. Hoffmann* for appellant.

*Jesse E. Cantor, District Attorney (Frank Del Vecchio* of counsel), for respondent.

Judgment affirmed.

Concur: LOUGHRAN, Ch. J., DESMOND, FULD and FROESSEL, JJ. LEWIS, J., dissents in the following opinion in which CONWAY and DYE, JJ., concur.

LEWIS, J. (dissenting). The defendant appeals by permission of a Justice of the Appellate Division, Fourth Department, from a judgment of that court which affirmed a judgment of County Court (Onondaga County) convicting him of criminal negligence in the operation of a motor vehicle resulting in death. (Penal Law, § 1053-a.)

The indictment charges that defendant operated a motor vehicle at an unlawful rate of speed on the wrong side of the street in a reckless and culpably negligent manner while under the influence of alcoholic beverages and failed to give a pedestrian the right of way while proceeding through an intersection.

The case for the People was made by evidence of the following facts: South Salina Street in the city of Syracuse is a main north-south thoroughfare. On December 3, 1949, at about 6:20 P.M., Mrs. Freda Cecile left a southbound bus at the northwest corner of the intersection of Rosemont Drive and South Salina Street. Rosemont Drive does not cross South Salina Street, but extends westerly from it. About twenty-five feet south of Rosemont Drive is Harding Place which intersects South Salina Street from the *east,* and likewise does not cross South Salina Street, but forms a T-shaped intersection. After a brief con-

versation with two women who had alighted from the same bus, Mrs. Cecile stepped into the street from the northwest corner of Rosemont Drive and South Salina Street and proceeded to walk southeasterly across South Salina Street toward the northeast corner of Harding Place. When she reached a point beyond the center line of South Salina Street, Mrs. Cecile was struck by an automobile owned by the defendant and then being operated by him in a southerly direction on the wrong side (the easterly side) of South Salina Street. There was evidence that the defendant did not sound his horn to warn of his approach; that his car skidded, on a dry pavement, approximately forty-five feet before striking Mrs. Cecile and thirty feet thereafter; and that the impact of the decedent's body against the left front of defendant's car drove deep dents into both hood and grill. The dead body of Mrs. Cecile came to rest ninety-six feet south of the point of impact.

The only evidence as to the speed of the defendant's car, other than the distance it skidded before and after the impact and the damage to the hood and grill, was by two witnesses, one of whom stated that the car '' was going along at a good clip '' and the other who testified that the speed of the car was in excess of thirty miles per hour. The legal speed limit at the site of the accident — which is within the city limits of Syracuse — was proved to be thirty miles per hour.

Two question-and-answer statements were taken from defendant by an assistant district attorney, one late in the evening on December 3d — the night of the accident — and another the following morning (December 4th). Defendant also signed an affidavit on the morning of December 4th. In the affidavit, defendant states — that prior to the accident he had two glasses of beer at a restaurant in Elmwood (within the city of Syracuse) and five or six glasses of beer at a restaurant on South Salina Street; that as he approached Rosemont Drive traveling at about thirty miles per hour, he saw a woman coming from in front of a bus — or '' a big truck '' as he later described it — and immediately applied his brakes; that he was then on the wrong side of the road and at the time felt a thud and skidded seventy-five feet.

As we read this record the defendant's attack upon the legal sufficiency of the evidence upon which he has been convicted

must fail. In other words there is evidence from which a jury could find that as the defendant approached the site of the accident he was operating his car at excessive speed; that he was then under the influence of intoxicating beverages; that he struck the decedent while he was operating his car on the wrong side of the street; and that he had failed to give warning of his approach. This evidence, if believed by the jury, was sufficient proof of culpable negligence in the operation of a motor vehicle to constitute a violation of section 1053-a of the Penal Law.

However, we believe that reversible error was committed at the trial by a ruling which deprived the defendant of an opportunity to examine a statement made by him to an assistant district attorney. We have seen that two question-and-answer statements were taken from defendant — the first late in the evening of December 3d and the second during the following morning. As to those two statements it appears that at the trial, after the District Attorney had read into evidence the affidavit and *second* statement, taken on the morning of December 4th, the following occurred:

" *Cross Examination* by Mr. Hoffmann [counsel for defendant]:

Q. Officer Ours, were you present the night before this statement was taken when another question and answer statement was taken? A. Yes.

Q. Is that here in Court? A. I haven't seen it.

Q. Do you have it, Mr. Del Vecchio [assistant district attorney]? A. Yes.

Mr. Hoffmann: I would like to offer it in evidence.

Mr. Del Vecchio: *I will offer it in my own good time.*

Mr. Hoffmann: I would like to offer in evidence the statement that Officer Ours took on the evening of the accident. I understand from what he tells us that he reduced to writing another question and answer statement.

Mr. Del Vecchio: That is correct. I am trying my case. *When it comes to his case he can put in whatever he wants in his case.*

Mr. Hoffmann: I think it ought to be put in as part of his case, it might explain this other statement give us details about the whole affair. I think I am entitled to have it go in evidence.

The Court: *If you want it put in evidence you may do that at the proper time.*

Mr. Hoffmann: Does Your Honor hold I don't have a right to put it in evidence at this time?

Mr. Del Vecchio: Not as part of my case.

Mr. Hoffmann: As part of your case, it is your witness.

The Court: You may proceed with your cross examination.

Mr. Hoffmann: Exception.'' (Emphasis supplied.)

When it came to the defendant's case, however, the following occurred while defendant was on the witness stand:

'' Mr. Hoffmann: Have you got the question and answer statement that was taken on the night of his arrest?

Mr. Del Vecchio: Absolutely.

Mr. Hoffmann: Can I see it?

Mr. Del Vecchio: Only under the direction of the Court will I do it, and only that which is contradictory.

Mr. Hoffmann: If you want the whole thing to go in evidence I will consent to it.

Mr. Del Vecchio: I ask that the Court strike out that statement of counsel.

Mr. Hoffmann: I take the position in as much as they have produced the question and answer statement of the following morning and affidavit, that therefore the jury should have the benefit of the questioning that was reduced to writing the night before.

Mr. Del Vecchio: If there was anything contradictory, but I am not claiming there was anything contradictory in it. I would show it for that purpose, I have no objection to producing it if you want to bring out things that are contradictory, that he has said here on the stand from what was said that night.

The Court: What do you want me to examine it.

Mr. Del Vecchio: That's why I didn't want to take the time of the jury on it.

Mr. Hoffmann: You took up a lot of time on the other one.

Mr. Del Vecchio: That was proper but this is not.

Mr. Hoffmann: In the interests of saving time, I will only examine the defendant as to matters concerning which Mr. Del Vecchio has used that statement, if I may have it.

The Court: I don't see the purpose of this. What is your purpose in examining the question and answer statement?

Mr. Hoffmann: I understand that Mr. Del Vecchio was asking him certain questions, whether he was asked certain questions and gave certain answers and he had that Exhibit in his hand. I don't think he marked it as an Exhibit.

Mr. Del Vecchio: I didn't have it in my hand.

Mr. Hoffmann: He had that document in his hand and I would like to examine that document in respect to 'those questions to see whether or not he gave the jury the full benefit of the full answers pertaining to the questions which he asked in which he read the answers that he gave.

The Court: Has this other Exhibit been received in evidence, this other question and answer statement?

Mr. Del Vecchio: Yes. This other question and answer statement has been received in evidence and I might point out that anything I cross examined him on which I claimed was inconsistent with what he had told me the night before, he admitted what he had told me, what I questioned him on, anything that was inconsistent.

The Court: I don't see the point of this.

Mr. Hoffmann: In other words, I can't look at it at all, is that Your Honor's ruling?

The Court: Yes.

Mr. Hoffmann: Exception.''

By the foregoing excerpts from the record it appears that when, during the presentation of the People's case, counsel for the defendant had been advised in open court that the defendant's first statement (of December 3d) was in the possession of the District Attorney, and had expressed the defendant's desire to offer that statement in evidence at that time, it was said by the District Attorney that when the time came for the defendant to present his defense '' * * * he can put in whatever he wants in his case ''; that in response to a suggestion by defendant's counsel that the statement of December 3d should be a part of the People's case, the court stated '' If you want it put in evidence you may do that at the proper time.'' However, when, during the presentation of the defendant's case, counsel for the defendant again asked permission to examine the statement of December 3d and again indicated his willingness that the jury consider whatever it contained, he was denied permis-

sion to examine that statement. For reasons presently to be set forth we think the defendant's exception to that ruling was well taken.

The record does not show that the Trial Judge was afforded an opportunity to examine the contents of the statement of December 3d prior to his ruling which deprived counsel for the defendant of an opportunity to make such examination. In view of that circumstance and upon the request of our court, the District Attorney has made the defendant's statement of December 3d available for our examination. In taking advantage of that opportunity we did so to enable us to ascertain whether the defendant's exception to the ruling by the Trial Judge — which denied defendant's counsel permission to examine the statement of December 3d — affected adversely the defendant's substantial rights. (Code Crim. Pro., § 542.)

Our examination of defendant's statement, taken on the night of December 3d five hours after the accident, discloses that when the defendant was asked to state the speed at which his car was being operated as he approached the decedent, his answer stated a speed *less* than the legal rate permitted within the city of Syracuse — a rate less than the speed stated by him in his answer to a similar question addressed to him on the following morning by the District Attorney when he made his second statement and signed a separate affidavit. It thus appears that the first statement — given by the defendant on the night of the accident — contained an answer to an assistant district attorney's question relative to his speed as he approached the site of the accident, which would have been favorable to his position before the jury in its consideration of his defense.

When this court reviewed a record involving a problem not widely different from the one now before us, the opinion by Judge CROUCH contained the statement — " When, however, it does appear that there is evidence in the possession or control of the prosecution favorable to the defendant, a right sense of justice demands that it should be available, unless there are strong reasons otherwise." (*People* v. *Walsh,* 262 N. Y. 140, 150.) A statement of the same rule — which has prompted frequent repetition — is to be found in the opinion by Chief Justice COOLEY, written in *People* v. *Davis* (52 Mich. 569, 573, 574):

" *. * * the State has no interest in interposing any obstacle to the disclosure of the facts, unless it is interested in convicting accused parties on the testimony of untrustworthy persons. But surely the State has no such interest; its interest is that accused parties shall be acquitted unless upon all the facts they are seen to be guilty; and if there shall be in the possession of any of its officers information that can legitimately tend to overthrow the case made for the prosecution, or to show that it is unworthy of credence, the defense should be given the benefit of it." (See, also, *People* v. *Walsh, supra,* p. 150; *People* v. *Schainuck,* 286 N. Y. 161, 165–166.)

Mindful, as we are, that proof of excessive speed, without more, is not enough to warrant a finding of a defendant's guilt under section 1053-a of the Penal Law (*People* v. *Bearden,* 290 N. Y. 478, 483; *People* v. *Grogan,* 260 N. Y. 138, 144; *People* v. *Angelo,* 246 N. Y. 451, 457), we cannot say in the present case that the defendant's substantial rights were not adversely affected by the ruling which deprived him of the right by his counsel to examine the statement of December 3d and, if so advised to offer it in evidence for consideration by the jury with his later statement and affidavit of December 4th which the prosecution had made part of the People's case.

The judgment of conviction should be reversed and a new trial ordered.