JoHfí J. Walsh, J.
The defendant stands indicted by the Grand Jury of the crime of criminal negligence in the operation of a motor vehicle in violation of section 1053-a of the Penal Law. There are two counts to the indictment since as a result of this accident, both the defendant’s wife and the wife of the driver of the other automobile involved died.
The allegations in each count are the same and allege that the defendant “ did operate and drive said motor vehicle *1041 * * * at a^ high rate of speed and did at said time and place, fail to keep said motor vehicle under control, and did cause said motor vehicle which was proceeding in a generally easterly direction to cross over to the left of the center of said highway and proceed along the northerly side of said highway, thereby causing said motor vehicle operated by said defendant, to collide with another motor vehicle ”.
The accident occurred on the 11th day of July, 1959. The defendant’s wife was pronounced dead on arrival at the hospital and the wife of the other driver involved died on July 24, 1959. Both the defendant and the other driver were so seriously hurt that it was impossible to obtain any statements until some time later.
On August 31, 1959 the driver of the other ear, Mr. Conde gave a sworn statement to the effect that “ I was looking straight ahead at the time driving about 25 or 30 mph when I saw a car headed easterly come around from the top of this hill like a streak of lightning, I figure this car was doing between 80 and 90 miles a hour and suddenly came across the highway headed for my car, my wife screamed and I applied my brakes but before I could do anything more the other car struck my car practically head-on, turning my station wagon in a northeasterly direction as the other car left the road went onto the northerly shoulder ditch and embankment.”
On September 3, 1959 the defendant gave a sworn statement to the effect that
“ [A]s he was proceeding between the Griffis Air Force Base gate and the motel operated by Charles Corcoran, at a point about i/4 to % mile easterly of the said Griffis Air Force Base gate there were extreme sharp flashes of lightning and a heavy downpour of rain; that in the midst of the flashes of lightning and the downpour of rain he suddenly saw a pair of headlights facing him and then there was a collision which knocked deponent unconscious.
“ That at the time of the collision deponent had on his front headlights, his windshield wipers were working, and he was driving at a rate of speed of approximately 35 miles per hour.
“ That at the point of the accident the roadway was wet, the visibility was poor, because of the extremely heavy downpour, and sharp flashes of lightning.”
On January 20, 1960 the Grand Jury returned an indictment. Thereafter defendant moved in the Supreme Court, Oneida County for an order granting defendant permission to inspect the Grand Jury minutes of the testimony upon which the indictment was found.
*1042 On June 10, 1960 Mr. Justice Hudson after examining the testimony before the Grand Jury and reviewing at length the judicial interpretation of section 1053-a of the Penal Law, particularly the cases of People v. Gardner (255 App. Div. 683) and People v. Bearden (290 N. Y. 478) in a memorandum opinion (24 Misc 2d 1033) concluded (p. 1035) that, “ Under the above decisions, I believe that the defendant is justified in seeking to move to dismiss the indictment and should have permission to examine the Grand Jury minutes for the purpose of making such application.”
On the 15th day of November, 1960 the defendant after examining the Grand Jury minutes pursuant to the order of the Supreme Court, moved before this court to dismiss the indictment pending herein.
Although an application to inspect the Grand Jury minutes is not granted without good cause and in spite of the learned opinion of Mr. Justice Hudson that the defendant is justified in seeking to move to dismiss the indictment for insufficiency of evidence, the responsibility rests upon this court. In accordance with that responsibility, we have examined the entire testimony before the Grand Jury and have arrived independently at the same conclusion based upon the testimony and the judicial interpretation of the appellate courts.

The Evidence

1. There was no evidence whatever that either driver had been drinking or was intoxicated. • In fact, the only evidence is to the contrary. The Deputy Sheriff, Eobert Money, who investigated the accident in response to questioning by a Grand Juror said:
Q. When you investigated at the scene, was there any smell of liquor on any of the passengers or drivers? A. No, there wasn’t.
“ Q. Was either man drinking? A. No, I will say this, I couldn’t smell any odor of alcoholic beverages.”
Bichard Haley, the ambulance driver was asked the same question:
“ Q. Did you observe any odor of alcohol in the car? A. No, I didn’t.”
2. The only testimony of excessive speed by the defendant was given by the operator of the other car, Mr. Conde :
‘ ‘ Q. Did you have the opportunity to judge the speed of his car? A. I would say 80 or 90 miles an hour.
“ Q. You saw it how long before the crash? A. Maybe two or three seconds.
*1043 “ Q. In other words, a very short time? A. Just like a bullet.”
The probative force and the sufficiency of such testimony will be discussed hereafter.
3. The only other evidence claimed to have a bearing on the question of negligence is not only remote and uncertain but it is equally consistent with the innocence of the defendant as it is with guilt, perhaps more so actually.
Two young ladies were witnesses before the Grand Jury as to an incident within the City of Rome at about 9:30 p.m. when they stopped for a red light at the intersection of East Dominick and Mill Street.
“ Q. Will you tell us what happened? A. The light turned red, so I stopped for the light and all of a sudden I felt this thud and turned around and when I did, I saw a black sports car with a man and a woman in it, that had tapped me in the rear and I just sat there stunned a little bit, and he backed out and came alongside me waiting for the light to turn and we both waited for the light to turn and while he was there there were some fellows on the corner and there were words back and forth and then the light turned and we both started up and I pulled to the curb, thinking he would do the same, but he kept on going, so I took his license number and got out of the car and went around my car and there was no damage, so I never reported it.
“ Q. What was the license number? A. I think it’s 8 MD 123.
“ Q. Did you recognize the person driving the car? A. No I didn’t know who he was.
‘1 Q. Can you tell us anything about the speed of the car that drove away? A. Well no, I couldn’t. I just about got his license number. ’ ’
4. The sole survivor, other than the defendant gave this version of the accident to the Grand Jury:
“ Q. When did you observe'this car coming in the opposite direction? A. Well, maybe two seconds, three seconds, before the accident, I don’t know, it was just like that. He was on top of the hill and I was * * * half way up the hill, I am going up and he was on my side and Esther says ‘ look at that car ’, and I blew my horn and put on the brakes and all he did do, like this, go on his side.
“ Q. What do you mean? A. On his side of the road, not my side when I first saw him and I thought he was going straight.
“ Q. Let me see if I follow you? You observed the lights, which side? A. On my side, right in front of me and then he just went over on his side of the road and I thought he was going *1044 by me, and it all happened a matter of seconds, and he come at me just like a bullet.
“ Q. Was there sometime before the collision his car went back onto the south side or his right side of the road? A. Yes, just before he hit us.
‘1 Q. Then he came back into your side ? A. Eight straight, bang, right in front of me.
“ Q. What was the position of your car? A. It was still in my lane. ’ ’
This being the entire evidence before the Grand Jury on the question of culpable negligence, the next inquiry is whether or not such evidence was sufficient under section 251 of the Code of Criminal Procedure which reads as follows: ‘‘ Degree of evidence, to warrant an indictment. The grand jury ought to find an indictment, when all the evidence before them, taken together, is such as in their judgment would, if unexplained or uncontradicted, warrant a conviction by the trial jury.”
Two people died as a result of this accident. “ We must, however, consider the matter dispassionately as is the obligation imposed upon the court under our law. We must not decree guilt because of the tragic death[s]. We would be less than candid were we not to admit being tempted to declare that this issue is one of fact, thereby placing the burden of determining the defendant’s fate upon the jury. If that course were to be followed, under the circumstances, we would be evading our solemn obligation as a judge however difficult and soul-searching the task.” * * * 11 If, as we believe, a jury’s verdict of conviction should be set aside on the basis of the People’s case, we should not avoid a difficult and onerous duty by letting the case go to the jury in the expectation that their acquittal would spare us this task. Such an expediency would neither be in good conscience or good law.” (People v. Fyfe, 6 Misc 2d 524, 526, 529 [1957].)

The Law as to Culpable Negligence to be Applied

The Court of Appeals in People v. Eckert (2 N Y 2d 126, 130-131) has most recently reviewed the doctrine of culpable negligence in the operation of a motor vehicle resulting in death: “ The terms reckless and culpably negligent not only have a definite and certain inherent meaning, but also have a determinative significance acquired through a history of judicial construction which long antedates this enactment (see People v. Angelo, 246 N. Y. 451, 453-457; People v. Gardner, 255 App. Div. 683, 685, which upheld the constitutionality of this section when chai *1045 lenged on the ground of vagueness). Yet, because of the unforeseeable, infinite variety of circumstances to which they might apply, courts have declined to construe them in a very definitive manner. On various occasions we have defined them as meaning a ‘ disregard of the consequences which may ensue from the act, and indifference to the rights of others ’ (People v. Angelo, supra, p. 457; People v. Grogan, 260 N. Y. 138, 144; People v. Bearden, 290 N. Y. 478, 482, supra). On occasion we have also cautioned that 4 A distance separates the negligence which renders one criminally, liable from that which. establishes civil liability ’ (People v. Rosenheimer, 209 N. Y. 115, 123; People v. Bearden, supra, p. 483); it is negligence which ‘ reached beyond the bounds of lack of skill and foresight where civil liability begins to a point where criminal liability is imposed ’ (Brown v. Shyne, 242 N. Y. 176, 183); it4 is therefore something more than the slight negligence necessary to support a civil action for damages ’ (People v. Angelo, supra, p. 457). By this we meant, as the terms obviously import and an analysis of the decisions indicate, that ordinary negligent conduct — that is, negligent conduct arising from carelessness, inadvertence, lack of skill, competence or foresight — would not be a sufficient basis to predicate a conviction where reckless or culpably negligent conduct was required. This is why a conviction under this statute cannot be based solely on proof of excessive speed (People v. Bearden, supra; People v. Walker, 296 N. Y. 740). The conduct required is of a different kind. As the terms signify, this conduct arises when the actor has knowledge of the highly dangerous nature of his actions or knowledge of such facts as under the circumstances would disclose to a reasonable man the dangerous character of his action, and despite this knowledge he so acts. That he does not view his conduct as dangerous is of no consequence; his lack of realization of the danger involved may arise from his abnormally reckless temperament or from unexpectedly favorable results of previous conduct of the same sort (see Womack v. Preach, 63 Ariz. 390; Cope v. Davison, 30 Cal. 2d 193; 2 Restatement, Torts, § 500). To be dangerous his conduct must involve a reasonable probability of serious bodily harm or death. This, of course, turns upon the particular circumstances of the case.”
It, therefore, becomes important to scrutinize the testimony before the Grand Jury in the light of the decisions of the highest courts of our State defining the essential elements which must exist before an indictment such as this can be returned.

*1046
Speed

Defendant takes the position that the observation of Mr. Conde and his opinion as to the speed of defendant’s automobile constitutes “ Such a feat of observation [as] one which strains credulity ” (Judge Lewis in People v. Bearden, 290 N. Y. 478, 483, supra [1948]).
The opinion of Judge Brown in People v. Lacey (Nassau County Court) reported in the New York Law Journal (March 21, 1958, p. 13, col. 2) is significant: “ The estimate as to the defendant’s speed is of equally little value. Even in the case of an experienced police officer who is trained to estimate the speed of moving vehicles, if the estimate is made while travelling in a direction opposite to that of an oncoming car, the estimate of the oncoming car’s speed is of little or no probative value.”
If we discount this testimony before the Grand Jury as to speed, then there is no evidence of speed before the Grand Jury.
But assuming that the Grand Jury accepted the testimony as to speed, the case of People v. Bearden (290 N. Y. 478, supra) holds that evidence of speed alone is not sufficient and also lays down the rule that circumstantial evidence must be inconsistent with innocence and must exclude to a moral certainty every other hypothesis save the guilt of the defendant.

Incident at Intersection in Home

It is clear that the testimony of Miss Bioffi and of Mrs. Spado with respect to the incident at the traffic light which happened between 2% to 3 miles from the scene of the accident is far too remote to be of any value as evidence and furthermore, it is clear that the incident about which Miss Bioffi and Mrs. Spado testified could not lead to any inference that it was improper driving at that point. It has no probative value.
From a study of all of the recent cases in the appellate courts on convictions for driving in a culpably negligent manner resulting in death, these general principles appear to have become somewhat stabilized:
(a) Physical condition of the defendant.
While it cannot be definitely held that evidence of intoxication alone is sufficient evidence, very little additional evidence of improper operation appears necessary. (People v. Kreis, 302 N. Y. 894; People v. Eurich, 303 N. Y. 723; People v. Balcerzak, 2 A D 2d 803, affd. 2 N Y 2d 868; People v. Cleveland, 258 App. Div. 800; People v. Downs, 5 A D 2d 935.)
If the defendant is subject to epileptic seizures and with knowledge thereof continues to drive, he may be subject to *1047 indictment. (People v. Decina, 2 N Y 2d 133; People v. Eckert, 2 N Y 2d 126.)
(b) Faulty equipment on car.
While a defendant may not be convicted of operating his car at the time of an accident with bad brakes in the absence of prior knowledge thereof (People v. Bonaventura, 271 App. Div. 900) such prior knowledge of inadequate brakes when coupled with other evidence showing speed and weaving motion of car may result in criminal liability. (People v. Weidman, 281 App. Div. 1003.)
(c) Speed alone.
Mere speed alone is insufficient. (People v. Bearden, 290 N. Y. 478, supra.) Speed must be accompanied by other evidence which demonstrates clearly the “ devil may care ” attitude which seems to be required. Thus, speed plus momentary lapses in care might not be sufficient. The lapse in care must continue to manifest itself over a sufficient interval of time however short to show clearly a choice by defendant between caution and recklessness.
Thus, the mere fact that a defendant might suddenly swerve into the wrong side of the road or might" go over the center line of a highway and strike another even though accompanied by speed has not been held sufficient. (People v. Fox, 271 App. Div. 936 [wrong side]; People v. Hubbs, 271 App. Div. 1021 [zigzagging] ; People v. Manning, 7 A D 2d 1008 [center line]; People v. Lacey, N. Y. L. J., March 21, 1958, p. 13, col. 2, supra [dividing line]; People v. Brucato, 32 N. Y. S. 2d 689 [sudden emergency].)
(d) Other circumstances.
Since the evidence of surrounding circumstances evincing a reckless disregard of the consequences by a defendant particularly in a case not involving intoxication or other physical disability of the driver becomes important, the following cases illustrate clear examples of such circumstances over a period of time or space:
Where driver was intoxicated, was speeding, was on the wrong side of the road, sounded no horn and skidded 45 feet. (People v. Kreis, 302 N. Y. 894, supra.)
Where driver was intoxicated, drove at a high rate of speed around a curve on the left side of the road, forced a car off the road, continued on without stopping and collided with another car. (People v. Eurich, 303 N. Y. 723, supra.)
*1048 Two cars racing at 60 miles an hour over a narrow road, the second car making a wide turn into another road, the driver losing control and car skidded into a bridge striking two persons. (People v. Berner, 304 N. Y. 690.)
Defendant operated car at an excessive and dangerous rate of speed in a thickly populated section of city, passed thru two intersections without stopping, going around to the right of an automobile going in the opposite direction which was stopped at one intersection and going over the curb to do so and then continued through a third intersection without stopping, colliding with another car. (People v. Mills, 10 A D 2d 395.)
There is no evidence in this case, nor did the Grand Jury have before it any evidence sufficient to satisfy the requirements indicated in the above decisions. Neither driver was intoxicated; the evidence as to speed was inconclusive; and the other circumstances were either too remote or conjectural.
In the light of the law and after a review of the facts and evidence, we conclude that the indictment was not found upon sufficient legal evidence and must be dismissed.
Motion to dismiss this indictment is granted, with leave to the District Attorney to resubmit to another Grand Jury if he so elects.
APPENDIX A

The Recent Leading Gases on Culpable Negligence Court of Appeals

1. People v. Bearden (290 N. Y. 478).
Speed alone is not sufficient.
2. People v. Walker (296 N. Y. 740).
Conviction reversed and indictment dismissed. Death occurred in an intersection collision. Defendant was going 40 m. p. h., applied his brakes and skidded 42 feet. No direct evidence that light was red when defendant entered intersection.
3. People v. Kreis (302 N. Y. 894).
Conviction in Onondaga County Court affirmed on appeal. Evidence disclosed that driver was intoxicated, was speeding, was on the wrong side of the road, sounded no horn, and skidded 45 feet.
4. People v. Eurich (303 N. Y. 723).
Conviction affirmed on appeal. Evidence disclosed that driver was intoxicated. Drove at a high rate of speed around a curve on the left side of the road, forced a car off the road and continued on, colliding with another car, causing death.
5. People v. Berner (304 N. Y. 690).
Conviction affirmed on appeal. Evidence disclosed that two ears were racing on a two-lane road, one ear following the other. The ears were doing 60 miles per hour and raising dust, the first ear made a sharp turn into another road, and the second driver not knowing road, made a wide turn, throwing the car out of control, the car skidded and swerved into a bridge, striking two people who were on the bridge.
*1049 6. People v. Stratton (1 N Y 2d 664).
Introduction of evidence that defendant refused to take a blood test for intoxication erroneous. New trial.
7. People V. Eckert (2 N Y 2d 126).
Indictment that defendant was negligent in that being subject to epileptic seizures, continued to drive. Valid.
8. People v. Decina (2 N Y 2d 133).

Appellate Division

1. People v. Hoh (254 App. Div. 588).
Conviction reversed and new trial granted. Erroneous charge by court on culpable negligence.
2. People v. Cleveland (258 App. Div. 806).
Conviction affirmed on appeal. Defendant intoxicated.
3. People v. Sackett (265 App. Div. 867).
Conviction reversed and new trial granted. Erroneous charge by court.
4. People v. Walker (270 App. Div. 1032).
Conviction reversed and indictment dismissed by Court of Appeals (296 N. Y. 740). Intersection case.
5. People v. Hubbs (271 App. Div. 1021).
Conviction reversed and indictment dismissed. The evidence showed excessive rate of speed and zigzagging on road. Held not sufficient.
6. People v. Fox (271 App. Div. 936).
Conviction reversed and indictment dismissed. The evidence showed that defendant was on left side of the road, going at a fast rate of speed, his faculties were dulled and he did not stop. Held not sufficient.
7. People v. Bonaventura (271 App. Div. 900).
Conviction reversed and indictment dismissed. The evidence disclosed bad brakes on defendant’s ear, but no evidence of prior knowledge by the defendant.
8. People v. Eurich (278 App. Div. 717).
Conviction affirmed and affirmed by Court of Appeals (303 N. Y. 723).
9. People v. Weidman (281 App. Div. 1003).
Conviction affirmed. The evidence showed defendant was doing 50-55 m. p. h. with inadequate brakes. Defendant was weaving and went around curve and hit another head on.
10. People V. Lowe (285 App. Div. 207).
Conviction reversed and new trial ordered. There was no evidence of intoxication and no proof of defective lights or equipment on ear.
11. People v. Stratton (286 App. Div. 323).
Evidence that defendant refused to take blood test erroneously received. New trial. (See 1 N Y 2d 664.)
12. People v. Decina (1 A D 2d 592).
13. People v. Eckert (1 A D 2d 903).
These two cases involved epileptic seizures.
14. People v. Gokey (2 A D 2d 231).
Conviction reversed and new trial ordered. The evidence showed defendant doing 40 m. p. h. and skidded. Also some testimony that defendant had had one Tom Collins before driving.
15. People v. Balcerzak (2 A D 2d 803).
Conviction affirmed. Driver intoxicated as shown by blood test. (Affd. 2 N Y 2d 868.)
16. People v. Kenda (3 A D 2d 80).
Conviction reversed and new trial ordered because of trial errors. Evidence showed intoxication to extent of .31%, other evidence was circumstantial.
*1050 17. People v. Downs (5 A D 2d 935).
Conviction affirmed. Driver shown to be intoxicated to extent of .18%. Sentence reduced to 1% — 2% years.
18. People v. Manning (7 A D 2d 1008).
Conviction reversed and indictment dismissed. While defendant was going at a moderate rate of speed and was over the center line, with a dirty windshield, evidence of intoxication was contested. Blood test showed .20%. Erroneous charge on presumption of blood test.
19. People v. Mills (10 A D 2d 395).
Conviction affirmed (St. Lawrence County). The defendant operated car at an excessive and dangerous rate of speed, passed through two intersections without stopping, jumping the curb at one and collided with car in the third intersection. Sentence reduced to 1-1% years.

Lower Courts

1. People v. Stegneier (N. Y. L. J., March 20, 1950, p. 987, col. 1 [Queens County, Stagg, J.]).
Indictment valid which alleges defendant while under influence of liquor, drove his automobile around and passed one or more cars which were stopped for a red light and then went through the red light.
2. People v. Lacey (N. Y. L. J., March 21, 1958, p. 13, col. 2 [Nassau County, Brown, J.]).
Evidence insufficient to hold for trial defendant who swerved across the center dividing line of a four-láne road and collided with an oncoming car. Defendant was doing 60 m. p. h. but blood test showed only .07% of alcohol.
3. People v. Brucato (32 N. Y. S. 2d 689 [Kings County, Liebowitz, J.]).
“ The fact that one when confronted with an emergency becomes panicky and loses control over a moving vehicle, and thus causes the death of another, falls far short of meeting the requirements of this section of the Penal Law, for a violation of which he may be subject to criminal responsibility.”