THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ARTHUR FINK, Appellant.

Third Department, March 29, 1963.

*Medwin, Tabner & Carlson (Nathan Medwin* and *John W. Tabner* of counsel), for appellant.

*John T. Casey, District Attorney (John E. S. Burke* of counsel), for respondent.

HERLIHY, J. This tragic accident occurred about 7:30 P.M. on the night of April 3, 1962 when the defendant, operating his 1957 automobile in a northerly direction on Route 20 between Hampton Manor and the City of Rensselaer, went off the highway on his side of the road and onto the shoulder, where he struck and fatally injured three teenage children who were walking on the shoulder and proceeding in the same direction as the automobile. The road was dry, straight, level and 44 feet 2 inches in width. The night was clear and the highway at the place of the accident was illuminated.

The defendant, 60 years old, was a laundry truck driver with 40 years of flawless driving experience. His sobriety and good character were attested to by a number of witnesses.

The indictment accused the defendant of the crime charged in that he operated his automobile "in a reckless and culpably negligent manner * * * *While under the influence of intoxicating beverages and in that he failed to have said automobile under proper control"*. (Emphasis supplied.) In response to a demand for a bill of particulars, the People elaborated on the charge in the indictment by alleging that the defendant failed to look in the direction he was driving, that he drove in such a manner as not to keep his car on the paved portion of the road, that he failed to see the pedestrians thus failing to make any attempt at avoidance, that he was not in proper physical condition to drive carefully, and that he was under the influence of intoxicating beverages. It was further alleged that the speed of the vehicle was unknown and that a blood test taken within two hours of the accident showed that defendant had .08% alcohol in his blood.

Mary Kordana, who testified for the People, stated she was employed as a barmaid at Tip's Restaurant and Grill and knew the defendant — he had been there before — and that on the day of the accident he arrived at the grill between 2:00 and 3:00 P.M. and was still there when she left at 6:00 P.M.; that during said period of time she served him four or five seven-ounce glasses of beer an hour for a total of 12 to 15 glasses. She was the only witness for the People as to the amount of alcoholic consumption by the defendant and she stated that he talked normally and was not disorderly or boisterous. Except for serving him beer, her testimony gave no indication that the defendant could have been under the influence of intoxicating beverages.

Several State troopers were witnesses for the People. Trooper Kellogg testified that upon arriving at the scene, he went to the automobile of the defendant, told him to get out and directed him to a police car where Trooper Boyle was requested '' to get the information from the driver that will be necessary for our report ''. This officer testified that he got the license and registration from the defendant who remained in the police car '' approximately twenty minutes to a half hour '' and '' He was quite incoherent in the beginning ''. The witness, in referring to the defendant's excitement and incoherence, remarked that this was '' understandably so ''. Senior Investigator Konkle, associated with the Bureau of Criminal Investigation, testified as to seeing the defendant at the scene. It is significant that in the extensive and cumulative testimony of these police officers, there is not a scintilla of evidence to support the allegation that the defendant was under the influence of intoxicating beverages, but to the contrary, the only reasonable inference to be deduced therefrom is that immediately following the accident he was excited and incoherent but thereafter sufficiently recovered so that he fully co-operated with the police officers in their investigation.

The blood test result, as stated in the bill of particulars (.08% alcohol), would not have sustained a conviction of a vehicle and traffic violation. (Operating a motor vehicle while ability to operate is impaired by the consumption of alcohol, Vehicle and Traffic Law, § 1192, subd. 1.)

As to the other allegations of recklessness and culpability, Officer Konkle testified that he saw a track mark on the shoulder of the road extending 180 feet from the rear wheel of the defendant's automobile and there was no evidence that the brakes had been applied. This testimony could account for the extensive injuries to the victims as enumerated by the physician who performed the autopsies. The driver and passenger in an auto-

mobile that came upon the scene immediately after the accident and proceeding in the same direction that defendant had been traveling testified that there was a glare in the highway at that particular point coming from a gasoline service station and used car lot across the road. A witness driving her automobile in the opposite direction testified that she saw an automobile coming toward her, that it went off the shoulder of the road causing dust and that she saw a body in the air. She did not see the pedestrians prior to their being hit and her testimony, as to the operation of defendant's automobile, might well be a predicate for civil negligence but not of such a character or degree as to sustain the charges in this indictment.

There is a separation between ordinary negligence of civil liability and the operation of an automobile in a reckless or culpably negligent manner sufficient to mandate criminal responsibility. For example, a conviction under the statute cannot be predicated solely on a charge of excessive speed albeit it might be ordinary negligence. (*People* v. *Bearden,* 290 N. Y. 478; *People* v. *Colosimo,* 17 A D 2d 683.)

The People failed to prove a prima facie case.

The defendant produced witnesses who were at the tavern when the defendant left, all of whom stated he appeared to be sober. A witness at the scene of the accident stated he was sober. The defendant testified in his own behalf and admitted he had six or seven glasses of beer. He said that just before he struck the victims, he thought he saw something coming from the left and swerved his automobile to the right.

The court, as part of its charge, read the indictment to the jury but made no further reference or explanation of the meaning of the stated conclusion therein '' under the influence of intoxicating beverages ''. The fact that this defendant had one beer might technically imply he was '' under the influence of intoxicating beverages '' and thus this jury, in the absence of any instruction, was left to speculation and surmise as to the meaning and application of this allegation in the indictment. We find nothing prejudicial per se as to the use of this language in an indictment but the People are required to prove beyond any reasonable doubt that such '' influence '' was directly associated with and a causation for the operation of the automobile in a reckless and culpably negligent manner. Because of the question of the degree and quantum and other possible deductions, such an allegation in an indictment is subject to many different interpretations by the average person and consequently requires the court to give an explicit and detailed explanation in language readily understandable by the jury as to the intent and meaning

of the language and removing any possible element of doubt or speculation. The operator of an automobile is not guilty of violation of section 1053-a of the Penal Law because he drinks alcoholic beverages but the test is, did the alcohol affect his physical and mental capacities, or both, to the extent that the alcohol was a cause for operating his automobile culpably and recklessly? The District Attorney, in his brief, relies upon *People* v. *Kreis* (302 N. Y. 894) which we find to be factually different, but even assuming it was controlling, the court therein in its charge to the jury stated: " I might say to you that because a person takes a few drinks of beer, you cannot say that just because of that he is culpably negligent or criminally negligent ".

In the present case, at the close of the charge, the Assistant District Attorney addressed the court:

" One more request. You probably have covered it, but just to make sure, People request charged to the jury that it is not necessary for the People to prove that the defendant was intoxicated at the time of this accident to constitute the charge in violation of the statute in question.

" Judge Pitt: So charge.

" Mr. Medwin: Exception."

This request to charge, under the circumstances, was prejudicial.

In a somewhat analogous situation, in *People* v. *Manning* (7 A D 2d 1008) where the conviction was reversed and the indictment dismissed, the court stated: " The court also erred in charging, at the People's request, that the ' People do not have to prove the [appellant] was intoxicated in order to sustain the verdict of culpable negligence.' While that charge was correct in the sense that intoxication is not an essential element of the crime defined in section 1053-a of the Penal Law, it was error so to instruct the jury in this case where, without proof of intoxication, there was a complete absence of evidence to establish a violation of that section. *An abstract proposition of law should not be charged where the effect could only tend to confuse the case in the minds of the jury and lead them to an incorrect result.* (Cf. *People* v. *McCallam,* 103 N. Y. 587, 596.) " (Emphasis supplied.)

That the jury in this case speculated or misunderstood the nature of the crime charged is best evidenced by the colloquy between the Clerk and a juror when the jury was polled. When asked as to her finding, the juror stated " Negligent ". When further interrogated, at the request of counsel for the defendant she stated " Guilty. Negligent. You know, not careful when — didn't think when he was driving, see ".

The requirement to sustain a criminal conviction for a violation of section 1053-a of the Penal Law is of a different kind as stated in *People* v. *Eckert* (2 N Y 2d 126, 130–131): "As the terms [reckless or culpable] signify, this conduct arises when the actor has knowledge of the highly dangerous nature of his actions or knowledge of such facts as under the circumstances would disclose to a reasonable man the dangerous character of his action, and despite this knowledge he so acts."

This conviction of Fink is based on implication. The man had some beer and the implication — but not *proven* — is that the beer caused him to operate his automobile recklessly and culpably. The criminal law provides that a defendant is presumed innocent and this presumption of innocence continues until his guilt is *proven* beyond a reasonable doubt.

The judgment of conviction should be reversed and the indictment dismissed.

BERGAN, P. J. (concurring). I agree that the proof does not establish the crime charged; but I would add a comment on the statement in the indictment "while under the influence of alcohol". Unless the prosecution is prepared to prove that alcohol had some actual and adverse effect on the manner in which a vehicle is operated, an expression such as "while under the influence of alcohol" should not be included in the indictment or charged to the jury.

It is true that some such phrase was in the indictment in *People* v. *Kreis* (302 N. Y. 894), but nothing in the published report of the decision, or in the dissenting opinion, or in the Appellate Division's memorandum (278 App. Div. 737) gives any indication that this point was decisive of the case.

The decision in *Kreis* must be read with *People* v. *Eckert* (2 N Y 2d 126), which makes it clear that if a physical condition of the operator (there a known tendency to epileptic seizures) is germane at all in a prosecution under section 1053-a of the Penal Law, it must play some effective role in the occurrence of the accident. The court was there able to say the evidence could sustain a finding that the accident causing death occurred when defendant operator was undergoing an epileptic seizure (p. 128) and that he knew his susceptibility to this seizure.

The loose term "under the influence of alcohol" is wholly without relevance to section 1053-a of the Penal Law, which is concerned with the operation or driving of a motor vehicle "in a reckless or culpably negligent manner", unless alcohol has adversely affected the operation itself. If that is sought to be proved it should be alleged that alcohol had been the cause or a cause of the recklessness.

226

The " influence of alcohol " may mean many things to many people, good, bad and indifferent. But unless it is bad, in the sense of impairing the capacity to operate a vehicle and causing its operation to become reckless or culpably negligent, it is out of place; and it needs no argument to suggest that when a statement of this sort stands unresolved on the perimeter of the case it prejudices the defendant's right to a fair trial.

Here the prosecution did not show that defendant was intoxicated; it did not show that alcohol affected his capacity to drive; and the question should not have been imported into the case.

GIBSON and TAYLOR, JJ., concur with HERLIHY, J.; BERGAN, P. J., concurs in a separate opinion in which GIBSON, HERLIHY and TAYLOR, JJ., concur; REYNOLDS, J., dissents, in part, and votes to reverse the judgment of conviction and order a new trial.

Judgment of conviction reversed, on the law and the facts, and indictment dismissed.