Fusco v Town of Colonie (2025 NY Slip Op 02629)

Fusco v Town of Colonie

2025 NY Slip Op 02629

Decided on May 1, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 1, 2025

CV-23-1509
[*1]Michael Fusco, Respondent,
v
Town of Colonie, Appellant, et al., Defendants.

Calendar Date:January 14, 2025

Before:Aarons, J.P., Pritzker, Lynch, Ceresia and Powers, JJ.

Cooper Erving & Savage LLP, Albany (Carolyn B. George of counsel), for appellant.
O'Connell and Aronowitz PC, Albany (Francis J. Smith of counsel), for respondent.

Aarons, J.P.
Appeals (1) from a judgment of the Supreme Court (L. Michael Mackey, J.), entered July 26, 2023 in Albany County, upon a verdict rendered in favor of plaintiff, and (2) from an order of said court, entered August 1, 2023 in Albany County, which denied a motion by defendant Town of Colonie to set aside the verdict.
As this matter has previously been before this Court, we are familiar with the nature of this action (201 AD3d 1114 [3d Dept 2022]; 196 AD3d 956 [3d Dept 2021]). In 2005, plaintiff purchased real property in the Town of Colonie (hereinafter defendant), Albany County that is situated on the top of a hill. The rear portion of plaintiff's property, similar to other neighboring properties, slopes steeply down to and adjoins Boght Road, a town highway that runs behind the property. Because the slope is prone to slippage, the subdivision plans approved by defendant included a steep slope line/slope stability setback and provided that no permanent structures could be built beyond that line without a geotechnical analysis by a soils engineer being presented to defendant. Shortly after purchasing the property, plaintiff began to improve it by installing a retaining wall, an inground pool, a patio deck, a play area for children and an array of solar panels, for which defendant issued building permits after plaintiff submitted the requisite geotechnical engineering reports and subsequent certifications of compliance.
In March 2017, defendant started to clear a water drainage ditch running parallel to Boght Road at the base of plaintiff's property. Defendant last worked on the drainage ditch on April 3, 2017. On April 10, 2017, plaintiff contacted defendant after noticing slippage scarps in his yard, complaining that the work being performed had destabilized the hill and that the land had begun to slide, thereby damaging his property and the improvements he had made. After filing a notice of claim with defendant indicating that the maintenance work along Boght Road was causing damage to his property, plaintiff commenced this action. Following a nine-day trial, the jury returned a verdict finding defendant solely liable for damages caused to plaintiff's property and awarded $700,000 in restoration costs. Defendant thereafter moved pursuant to CPLR 4404 to set aside the verdict, contending that the jury's findings were contrary to law, that Supreme Court improperly instructed the jury regarding damages and, in any event, that the jury verdict and award of damages was against the weight of the evidence. Supreme Court, finding plaintiff's contentions without merit, denied the motion. Defendant appeals both the judgment on the jury's verdict and the order denying its motion to set aside the verdict.
Defendant contends that Supreme Court erred in not granting its motion to set aside the verdict, arguing that no jury could reach the challenged verdict on any fair interpretation of the evidence. We disagree. "A jury verdict should not be set aside as contrary [*2]to the weight of the evidence unless the trial proof preponderated so heavily in favor of the losing party that the verdict could not have been reached on any fair interpretation of the evidence" (Lisa I. v Manikas, 231 AD3d 1322, 1326 [3d Dept 2024] [internal quotation marks and citations omitted]; see Aesch v Lambarski, 229 AD3d 945, 946 [3d Dept 2024], lv denied 42 NY3d 912 [2025]; Raucci v City School Dist. of City of Mechanicville, 203 AD2d 714, 714-715 [3d Dept 1994]). Showing that a different verdict would not have been unreasonable is insufficient to warrant such relief, "as the jury's verdict will be accorded deference if credible evidence exists to support its interpretation" (Paternak v County of Chenango, 226 AD3d 1220, 1222 [3d Dept 2024] [internal quotation marks and citations omitted]; see Endemann v Dubois, 207 AD3d 1009, 1010 [3d Dept 2022], lv denied 39 NY3d 909 [2023]; Halvorsen v Ford Motor Co., 132 AD2d 57, 60 [3d Dept 1987], lv denied 71 NY2d 805 [1988]).
Preliminarily, we are unpersuaded by defendant's assertion that, as a matter of law, it owed no duty to provide lateral support to plaintiff's adjoining property or to any structures or improvements installed on plaintiff's property in performing maintenance work on the drainage ditch on Boght Road. "Although municipalities have no duty to preserve the lateral support to adjacent land in the construction and maintenance of highways and roads, municipalities are liable for damages to adjoining property proximately caused by their negligence in construction and maintenance" (Colgan v Town of Hillsdale, 68 NY2d 788, 789 [1986] [citations omitted]; see Dorrity v Rapp, 72 NY 307, 309-310 [1878]). In performing its proprietary function of maintaining streets and drainage systems, a municipality is obligated to exercise ordinary care (see Town of Yorktown v Vanguard Tours, 83 AD2d 866, 866 [2d Dept 1981]) and can be subject to liability under ordinary principals of tort law (see Heeran v Long Is. Power Auth. [LIPA], 141 AD3d 561, 563 [2d Dept 2016], affd sub nom. Connolly v Long Is. Power Auth., 30 NY3d 719 [2018]).
To that end, there is sufficient evidence to support the jury's finding that defendant was negligent. Testimony established that, after receiving complaints about dangerous icing conditions on Boght Road, defendant, in March 2017, began clearing out and reestablishing the approximately two-to-three-foot drainage ditch running along Boght Road, which went behind plaintiff's property and the property of his neighbors. The evidence established that defendant and certain of its employees, including William Neeley, the head of defendant's highway department who directed the reestablishing of the drainage ditch, were aware of the instability of the slope. Despite being aware that the slope was prone to slippage, such information was not conveyed to the members of the highway crew excavating the drainage ditch nor was the foreman of the excavation operation informed by defendant's [*3]highway maintenance supervisor of the boundaries of the right-of-way along Boght Road.
Relatedly, testimony established that defendant's right-of-way for Boght Road measured approximately 50 feet, with roughly 13 feet of that right-of-way extending beyond the pavement of Boght Road. Evidence established that the excavation work of digging out soil, trees, vegetation and root systems extended approximately 250 feet along Boght Road and 17 to 26 feet from the edge of the pavement and into the toe of the slope. Plaintiff's expert, Gregory Gifford, a geotechnical engineer, testified that, by measuring 17 feet from the pavement, he conservatively estimated that 364 tons of soil were removed during the excavation process. Under questioning about the extent of the excavation, Neeley admitted that the work went "above and beyond" a ditch cleaning project and "a little further than [the crew] probably should have," which, he stated, was why he had instructed the crew to stabilize the slope. Regardless, Neeley testified that, despite the excavation work, he did not believe it was necessary to warn the crew of the slippage-prone soil comprising the hill or to do any sort of slope stability analysis before excavating.
In evaluating the cause of the slope's failure, Gifford testified that he visited the site approximately 15 times; took photographs; reviewed, among other things, surveys and topographical maps showing boundaries and improvements; and performed various tests, including three soil borings to 40 feet deep to obtain a stratification cross section of the soil and test those soil samples in a lab. In his testimony, Gifford also referenced that defendant received reports of water at the base of the slope in March 2016. Tests of the water detected the presence of chlorine, indicating that it was not ground water. Other than the testing, no further action was taken by defendant. Testimony also established that, in December 2016, defendant discovered a water main break in the same area around the base of the slope and that the hole dug to repair the leak had to be dewatered because the ground was saturated.
According to Gifford, given defendant's knowledge of the landslide-prone slope, the swollen groundwater levels due to the water main break at the base of the slope — which potentially caused the water table to increase and reduce the slope factor safety — and the improvement structures built by plaintiff at the top of the slope, defendant should have done some investigation into the stability of the slope prior to the excavation. Such an investigation would have disclosed that the slope's stability would be compromised by the major excavation work that went beyond drainage ditch maintenance and into the base of the slope onto plaintiff's property and that measures would need to be taken to prevent the slope from failing. Gifford testified that defendant's actions in excavating and removing the soil at the toe of the slope reduced the slope safety factor[*4], which caused the slope to fail and damage plaintiff's property, and that the improvements made approximately 10 years earlier to plaintiff's backyard did not cause the slope's failure. In opposition, defendant offered the testimony of Charles Symmes, its own expert geotechnical engineer. Symmes contradicted Gifford's conclusions as to how, when and why the slope began to fail and called into question the accuracy of the geotechnical engineering reports relied upon in granting plaintiff approval to erect various improvements in his backyard. Symmes disputed that the improvements to plaintiff's backyard and the fill required for such improvements did not contribute to the slope's instability, and he indicated that the slope was unstable and potentially already failing before defendant began its excavation work.
In view of the foregoing, a fair interpretation of the evidence could support the jury's conclusion that defendant was negligent. The differing opinions of the geotechnical engineering experts presented the jury with a credibility determination, which is within its purview to resolve (see Aesch v Lambarski, 229 AD3d at 948; Endemann v Dubois, 207 AD3d at 1011). Further, contrary to defendant's contention, there was ample evidence for the jury to conclude that defendant performed more than simple maintenance work and went beyond its right-of-way and on to plaintiff's property in excavating into the toe of the slope — which, as noted in the jury instructions, is not determinative of negligence but a factor to be considered in determining whether defendant acted negligently. Upon our review of the evidence presented and the inferences drawn therefrom, and according great deference to the jury's credibility determinations, we are unpersuaded that the trial proof preponderated so heavily in favor of defendant that there was no fair interpretation of the evidence upon which the jury could have concluded that defendant was negligent in its excavation work and that there was no comparative negligence on the part of plaintiff (see Lisa I. v Manikas, 231 AD3d 1326; Aesch v Lambarski, 229 AD3d at 948).
As for damages, initially, we are unpersuaded that Supreme Court's abridged instruction to the jury regarding damages was erroneous such that setting aside the verdict was warranted. The proper measure of damages for injury to real property is typically the lesser of the cost to repair or the diminution in market value (see WFE Ventures, Inc. v GBD Lake Placid, LLC, 197 AD3d 824, 834 [3d Dept 2021]; Lopez v Adams, 69 AD3d 1162, 1166 [3d Dept 2010]; Prashant Enters. v State of New York, 228 AD2d 144, 148 [3d Dept 1996]). Plaintiff needed only to present evidence as to one measure of damages and, having presented evidence regarding the costs of restoration through expert testimony, the burden shifted to defendant to establish that a lesser amount would sufficiently compensate plaintiff for the loss (see Fisher v Qualico Contr. Corp., 98 NY2d 534, 539 [2002[*5]]; Jenkins v Etlinger, 55 NY2d 35, 39 [1982]; Webster v Ragona, 51 AD3d 1128, 1130 [3d Dept 2008]). No evidence was presented by either party as to the reduction in market value of plaintiff's property immediately before and after the damage to the property, thereby leaving the award of damages to be based upon only the cost of restoration (see Jenkins v Etlinger, 55 NY2d at 39; see also Davies v Lynch, 4 AD2d 1008, 1008 [4th Dept 1957]). Under those circumstances, Supreme Court properly instructed the jury only with regard to the cost of restoration, as those instructions were consistent with the evidence presented and did not err in excluding the portion of the damages charge related to the diminution in value, as any award based upon that measure could have led to a speculative and incorrect result (see Green v Downs, 27 NY2d 205, 208-209 [1970]; Forman v McFadden, 44 AD3d 523, 524 [1st Dept 2007]; People v Fink, 18 AD2d 220, 224 [3d Dept 1963]). Having been presented with the uncontroverted testimony of plaintiff's expert, who testified as to the nature and extent of the loss and cost to restore the improvements, viable evidence exists to support the jury's award of damages — which award, we note, was less than that testified to by plaintiff's expert.To the extent not specifically addressed, defendant's remaining contentions are unavailing.
Pritzker, Lynch, Ceresia and Powers, JJ., concur.
ORDERED that the judgment and the order are affirmed, with costs.