### (February 14, 1972)

 THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. EDWARD McDUFFY, Appellant.— Memorandum. Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered December 18, 1970, convicting him of murder (2 counts), upon a jury verdict, and imposing sentence. Judgment affirmed. No opinion. Martuscello, J. (dissenting). I concur with the dissenting opinion of Mr. Justice Shapiro insofar as it indicates that the evidence was insufficient to support a conviction for felony murder based on robbery and that the judgment should be reversed. However, I further vote to dismiss the two counts in the indictment for felony murder upon which the defendant was convicted and not to order a new trial. The trial court dismissed the common-law murder counts as well as other counts of the indictment upon the motion of the District Attorney. Thus, the only counts remaining are those upon which the conviction rests. Since the People failed to produce sufficient evidence to sustain a conviction, the indictment must be dismissed. This case is distinguishable from *People* v. *Jackson* (20 N Y 2d 440), mentioned in the dissenting opinion of Mr. Justice Shapiro, since there the indictment charged that the defendant willfully, feloniously and with malice aforethought shot William J. Ramos, Jr. with a revolver and thereby inflicted divers wounds upon him, from which he died. Under such an indictment, evidence of both common-law murder and felony murder was properly adduced and the conviction could be for either or both. At bar, on the other hand, there were separate counts for common-law murder and for felony murder and the latter count was not in the common-law form but specifically alleged the underlying felonies. Shapiro, J. (dissenting). The principal point raised on this appeal is that there is no evidence in the record to establish whether the defendant conceived the intent to rob his two victims *before* or *after* he killed them and that therefore his conviction on a felony murder theory was not warranted. The issue thus is a narrow one: Was there sufficient evidence to permit the jury to determine that the defendant formed the intent to commit the robbery *before* he

proceeded to kill his victims?[1] I am persuaded that not only is there insufficient evidence that the intent to rob preceded the killings but that there is literally no proof of when such an intent was formed. The defendant was found guilty of two counts of felony murder, the jury having found that he caused the death of Elizabeth and William Hilton during the course of a robbery. He was found not guilty of two counts of felony murder allegedly committed during the course of a burglary. Proof of guilt was entirely circumstantial. The defendant had been seen in the company of the victims at a tavern in the early morning hours of May 10, 1969, where the victims had been heard to tell him that they had a broken television set. The defendant told them that he repaired television sets. No one saw the defendant and the victims leaving the tavern together, although presumably they did so. About two hours after their departure from the tavern (*and at about 3:00 A.M.*), the defendant was stopped by the police on a public street when he was seen carrying a television set belonging to the Hiltons. He was also found in possession of William Hilton's wallet and missal. Blood was present on the defendant's eyeglasses, outer garments and a knife in his possession. A detective dispatched to the Hilton residence discovered their dead bodies. They had each died in a particularly brutal fashion, as the result of multiple stab wounds. The jury's verdict as to the felony murder counts was taken before it had concluded its deliberations as to various other counts of the indictment, including those charging common-law murder. Those counts were dismissed, following the receipt of the verdicts as to the felony murder counts, on the motion of the prosecutor, notwithstanding the jury's assurance that it would be able to arrive at a verdict as to all counts.[2] The defendant's conviction of felony murder may only be upheld if the jury could properly find that he formulated his intention to rob *prior* to the killings of the victims. The rule was cogently set forth by Chief Judge Fuld in *People* v. *Joyner* (26 N Y 2d 106, 109), where, speaking for a unanimous court, he said: " The governing principle is clear. A person may be convicted of felony murder only if it be shown that he, killed ' in the attempted execution of the unlawful end.' (*People* v.

---

1. Of course, if the intent to steal was formulated only after the victims were killed, the taking is technically a larceny and not a robbery (cf. Penal Law, §§ 155.00, 160.00). However, to avoid undue confusion, the term robbery shall be used to describe the taking, regardless of when the intent arose.

2. Whether, if the judgment appealed from is ultimately reversed, the prosecutor may nevertheless move to withdraw his motion to dismiss and to reinstate the common-law murder and other substantive counts of the indictment which the jury did not pass upon is an open question (cf. *People* v. *Cefaro*, 45 Misc 2d 990, 991–992, the reasoning of which was necessarily affirmed in 28 A D 2d 694 and 21 N Y 2d 252). The verdict as to the felony murder counts did not amount to an implied acquittal on the common-law murder counts, as the jury never had a full opportunity to consider those counts (cf. *People* v. *Jackson*, 20 N Y 2d 440, 452). In *Jackson*, jeopardy was held not to have attached to felony murder counts of the indictment which the jury had been instructed not to consider if they found the defendant gulty of common-law murder. There the indictment charged both common-law and felony murder. The jury was instructed that it could not convict the defendant on more than one homicide count. Hence, the jury's silence on the felony murder count did not bar his subsequent conviction on that count following the utlimate reversal of the common-law murder conviction. The practical effect of the dismissal of the common-law murder counts in this case had no different effect than the instructions in *Jackson*. The jury was prevented from reaching a verdict as to the common-law murder and other counts which it had not yet fully considered.

*Wood,* 8 N Y 2d. 48, 51; see, also, *People* v. *Luscomb,* 292 N. Y. 390, 395; *People* v. *Lytton,* 257 N. Y. 310, 312; former Penal Law, § 1044.) If the intent to commit the felony, robbery in this case, came into being after the defendant had killed his victim, the defendant was not guilty, and could not be convicted, of felony murder. (See, e.g., *People* v. *Levan,* 295 N. Y. 26; *People* v. *Willett,* 36 Hun 500.) " Here there is no direct proof with regard to *when* the defendant formulated his intention to rob, the proof of robbery being limited to and solely dependent upon his possession of articles taken from the Hilton premises. Hence, there is no basis for an inference that the intent to rob was formulated before the killings (cf. *People* v. *Lewis,* 275 N. Y. 33, 39; *People* v. *Razezicz,* 206 N. Y. 249, 269; *People* v. *Cleague,* 22 N Y 2d 363). In the *Cleague* case Judge Breitel stated the rule which, in my opinion, is here applicable. He said (pp. 365–367) : " The well-settled rule in criminal cases with respect to those which depend exclusively upon circumstantial evidence is that ' the facts from which the inference of the defendant's guilt is drawn must be established with certainty — they must be inconsistent with his innocence and must exclude to a moral certainty every other reasonable hypothesis ' *(People* v. *Bearden,* 290 N. Y. 478, 480). * * * Consequently, in order for the conviction to stand, the facts in this case, viewing them most favorable to the People, must be inconsistent with defendant's innocence and must also exclude to a moral certainty every other reasonable hpyothesis. * * * But circumstantial evidence is as nothing unless the inferences to be drawn from the circumstances are logically compelling. The danger, therefore, with the use of circumstantial evidence is that of logical gaps — that is, subjective inferential links based on probabilities of low grade or insufficient degree — which, if undetected, elevate coincidence and, therefore, suspicion into permissible inference." While the evidence in this case warranted a finding that the defendant was guilty of the homicides, there is no proof to warrant a finding that the homicides took place during the course of a robbery. The proof indicates that the defendant likely accompanied the victims to their apartment to repair their television set. However, it is no more probable that he killed them during the course of robbing them than it is that he did not formulate the intention to steal until after he had killed them. Under these circumstances, and mindful that " a criminal, however shocking his crime, is not to answer for it with forfeiture of life or liberty till tried and convicted in conformity with law " *(People* v. *Levan,* 295 N. Y. 26, 32), I am constrained to vote to reverse the judgment of conviction and to order a new trial.[3] Munder, Acting P. J., Latham and Brennan, JJ., concur in memorandum; Martuscello, J., dissents and votes to reverse the judgment and to dismiss the two counts upon which defendant was convicted, with an opinion. Shapiro, J., dissents and votes to reverse the judgment and to order a new trial, with an opinion. Judgment affirmed, etc.

---

3. CPL 470.20 (subd. 2), which requires dismissal of the accusatory instrument upon a reversal for legal insufficiency of trial evidence is not applicable, as the notice of appeal was served and filed prior to Sept. 1, 1971, the effective date of the CPL (CPL 1.10, subd. 2). In the interest of justice a new trial is mandated (cf. *People* v. *Lee,* 308 N. Y. 302).