MYERS et al. v. BAKER.

(Supreme Court, Appellate Division, Third Department.   November 15, 1899.)

1. EASEMENT—REPAIRS TO PRESERVE USE GRANTED—ENLARGEMENT OF USE.
    The owner of an easement may make all repairs necessary for the preservation and enjoyment of the use granted, as an incident to the grant, but he cannot enlarge the character or extent of the use.

2. RIGHT TO GATHER ICE—ENLARGEMENT OF EASEMENT.
    Where, at the time an easement was granted in an ice field, to gather ice therefrom, there was an annual influx of sand which interfered with the use granted, the erection of a barrier by the owner of such easement across the upper end of the field, against the influx of sand, which operates to divert the current and to deposit sand on the land above, is not a repair necessary to preserve the use granted, but an enlargement of the easement.

Appeal from judgment on report of referee.

Action by Peter W. Myers and Frank Myers against Charles N. Baker to recover damages. There was a judgment for plaintiffs, and defendant appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

John De Witt Peltz, for appellant.
W. Frothingham, for respondents.

PARKER, P. J. Vlauman's creek is a strip of water lying east of and adjacent to the west bank of the Hudson river, and is bounded on its easterly side by a long strip of lowlands and an island, which separates it from the main stream, and upon the east side of which island is a dike protecting it from the river itself. The plaintiffs' grantor owned a tract of land along this creek, on both its westerly and easterly sides. She conveyed to the plaintiffs a parcel of land on the west bank having a frontage on said creek of about 500 feet, and extending westerly back from the water about 250 feet, upon which was located an ice house and fixtures. Such parcel was purchased for the purpose of storing ice thereon. She also conveyed by the same deed four other strips, of about 10 feet in width, and of different lengths,—one above and one below the

ice house, and on the west bank, and the other two on the opposite side of the creek and lowlands, and upon the island above referred to. The conveyance also contained this further provision:

"Together with the right to pile or dump upon the adjoining land of the party of the first part, on either of said peninsulas or island, any material excavated from the waters adjacent to any and all of the premises above described. Together with the exclusive right to use, for the purpose of gathering and storing ice therefrom, all the waters which lie between the center line of said wing dam, on the north, and the southerly line of lot B, on the south, and the west bank of the Vlauman's creek, or the river, on the west, and the peninsula or island above referred to as having been formed west of the dike, on the east. Said party of the first part reserves to herself, however, the right to the use and occupation of any and all of the above-described premises, except the premises firstly described herein, for any and all purposes that do not conflict or interfere with the use thereof for the purpose of gathering and storing ice, and the use of the same for the purpose of piling and dumping material excavated as above provided."

The wing dam therein mentioned was north of the ice-house lot, extending easterly and westerly across the lowlands and on to the island. It was mostly destroyed, but its location could be traced under water. The parcel above described, and from which the right to take ice was given, designated on the trial as the "ice field," extended south past the ice-house lot, and was inclosed on the east by the island aforesaid. It included the said creek and lowlands, which were usually covered with water. The plaintiffs entered into possession, took ice from the ice field, and used the ice house in which to store it. After such user for some years, being troubled by the washing of sand onto such field, they drove a row of piles across its upper end, and just below the wing dam, for the purpose of preventing such flow of sand, and preserving the water on the ice field in a proper condition for taking ice therefrom. The plaintiffs' grantor owned the lands and stream above, or north of, such dam; and subsequently to her conveyance to the plaintiffs these defendants succeeded to all her rights therein, and also to the lands above described, subject to the rights therein which plaintiffs acquired under their said conveyance. The defendants, claiming that the piles so driven by plaintiffs injured their property, cut them down. The plaintiffs brought this action to recover damages for the same. A judgment was rendered in their favor for the value of the piles which had been driven upon the ice field above described, and also six cents damages for the injury caused thereby, and from such judgment this appeal is taken.

The referee before whom this action was tried held that the plaintiffs acquired the right to drive the piles, as an incident to the easement conveyed in their deed from the defendants' grantor, and that the defendants were therefore not authorized to cut them down. If he was right in this conclusion, this judgment must be affirmed. If he was not right, then, concededly, the judgment must be reversed. Undoubtedly, the right to enter upon such premises, and make all repairs necessary for the preservation and enjoyment of the use granted, passed as an incident to such grant. But the right to enlarge the character or extent of such use did not pass.

The owner of the servient estate has the right to insist that the easement enjoyed shall remain substantially as it was at the time it accrued, regardless of whether benefit or damage will result from a proposed change. 10 Am. & Eng. Enc. Law (2d Ed.) 428, 429. The plaintiffs' claim is that sand was annually washing down onto the premises described, and interfering with the use granted them. The referee does not, however, find, as a fact, nor does it clearly appear, that this same condition did not exist when such use was granted to them. The current against which plaintiffs now seek to build a barrier existed then as it does now, and the drifting sand then, as now, was spread through the waters, and was deposited on the lands. Concede that, by building the barrier proposed, they will secure the use of such waters freed from such invasion, yet I think it clear that they would thereby have enlarged the easement granted them. They would have a better thing than the one given them, and they would have secured it to the injury of their grantor. Their grantor owned, not only the lands which constituted this ice field, and the waters over them, but also a large tract above it, and over and from which such waters flowed; and the construction of such barrier, it is claimed, interfered with the natural flow of the waters over such upper lands. It would seem clear that, if it operated to keep the sand off from the ice field, it would tend to deposit it onto the lands above; and, also, there is very strong evidence that it would operate to change the current in times of high water, and wash out parts of the upper lands. It may be true that the effect of sand washing in from year to year will be to fill up the shallow places on this ice field, and to naturally lessen its use, if not ultimately destroy it, as a place from which to take ice, but I cannot agree that the building of a barrier to prevent such washing is but a repair necessary to preserve the use granted. It does not reconstruct or renew anything that was there when the grant was made. It erects an entirely new and permanent structure, which operates, not merely to continue the existing conditions, but to create a new one. When taken, the use was subject to the annual influx of sand, and the liability to be thereby injured and ultimately destroyed was a defect attending it. The proposed structure will remove such defect. But it is not warranted by the rule which allows the dominant tenement to keep in repair such structures as were necessary to the existence of the easement when created. It was upon the principle of such necessary repairs that the remark of Judge Finch in Huntington v. Asher, 96 N. Y. 613, was based, and it is not an authority to the extent to which the referee has applied it.

It is claimed that, by well-settled rules of construction, the grant of the use of the waters for the purpose of taking ice carried with it the right to do everything necessary to enable the plaintiffs to enjoy such use, and that the erection of this barrier against the influx of sand was necessary to such enjoyment. But it seems clear that the erection of such a barrier is not necessary to the enjoyment of the use granted, and it cannot reasonably be supposed that it was in the minds of the parties when the grant was

made. Ice had been taken from such "field" before the grant, and since, without the protection which the barrier would afford, and it was such use as had been and could then be enjoyed that was intended to be given by the grant. The idea that the plaintiffs were to build a substantial structure across the upper end of it, that would operate to divert the current, to deposit sand above it, and at all times of the year obstruct the passage from the upper to the lower waters, cannot fairly be supposed to have entered into the contract. It does appear, however, from those provisions allowing plaintiffs to pile material excavated from the waters onto the grantor's islands, that the parties probably contemplated that whatever filling up should thereafter be caused by the influx of sand would be remedied by dredging; and the existence of such a provision rather repels the idea that the plaintiffs were expected to guard against such influx by building the permanent barrier in question. I conclude, that the referee has extended the rule which he invokes, to an extent beyond what the facts of this case will warrant. The right to drive piles and erect a barrier such as they proposed to do was not given the plaintiffs, either in terms, or as an incident to the easement granted them, and therefore the defendants were not trespassers in removing the same. Whether the defendants were liable for damages done to the plaintiffs' easement by removing the piles driven upon lands of the state, inasmuch as they were merely nominal, need not be now discussed. If they were, it is no reason why the judgment should be affirmed to that extent. It was error to hold them liable for removing the piles that were placed on the servient tenement, and for that reason the judgment must be reversed.

Judgment reversed, referee discharged, and a new trial granted; costs to abide the event. All concur, except PUTNAM, J., not voting.