██ Margarita Lopez et al., Respondents, v Robert Adams et al., Appellants, et al., Defendants. [895 NYS2d 532]—

Garry, J.

Plaintiffs commenced this action alleging that their adjoining parcels of land in the Town of Lumberland, Sullivan County were damaged by repairs carried out by defendants Robert Ad-

ams and Brian Kilcommons (hereinafter collectively referred to as defendants) on an easement that defendants held across plaintiffs' properties. The subject easement is a private roadway that runs up a steep incline along the boundary line between plaintiffs' properties to access defendants' properties above, bordered by an embankment on property owned by plaintiffs Gene Bierhorst and Susan Bierhorst and a stream on property owned by plaintiff Margarita Lopez. In 2004, defendants decided to repair and improve the road, and undertook to do so. During roughly the following two years, defendants engaged in some further efforts to improve the condition of the roadway and to address erosion control upon the surrounding property. In this same period, three severe storms caused floods and damage to plaintiffs' properties.

Plaintiffs commenced this action alleging that defendants carried out the work negligently and caused damage to their properties, both by subjecting their properties to flood and erosion damage and by directly damaging the Bierhorsts' cesspool and water supply. Defendants denied these claims, though admitting that, in the course of their work, they drove the bulldozer across the Bierhorsts' property in the area of the cesspool and, also, that they had removed a concrete dam from the stream on Kilcommons' property.*

Following an extensive bench trial, Supreme Court found that defendants were entitled to maintain the roadway, but had done so improperly in several respects and were thus liable for the resulting damage to plaintiffs' properties. The court awarded damages to plaintiffs jointly for the repair of the roadway, embankment, and stream banks between the state highway at the road's southern end and the northern boundaries of plaintiffs' properties. Individual damages were awarded to Lopez for reconstruction and rehabilitation of the stream on her property, construction of a new retaining wall on the stream's west bank, and a new bridge, and to the Bierhorsts for a new drilled water well and cesspool. Defendants appeal.

Initially, defendants argue that they cannot be held liable for the damage to plaintiffs' properties because their easements gave them the right to enter their land to maintain and repair the road. Supreme Court correctly found that defendants' right to use the road for access included the right to carry out work as necessary to reasonably permit the passage of vehicles and, in so doing, to "not only remove impediments but supply

---

* Supreme Court found that this dam had provided flood protection to plaintiffs' downstream properties by controlling and limiting the stream's flow during periods of high water.

deficiencies in order to construct [or repair] a suitable road" (*Missionary Socy. of Salesian Congregation v Evrotas*, 256 NY 86, 90 [1931]; *see Bilello v Pacella*, 223 AD2d 522 [1996]; *Minogue v Kaufman*, 124 AD2d 791, 791-792 [1986]). However, defendants' rights to make lawful and reasonable use of their easements were limited to those actions "necessary to effectuate the express purpose of its easement" (*Albrechta v Broome County Indus. Dev. Agency*, 274 AD2d 651, 652 [2000]). Plaintiffs had corresponding rights "to have the natural condition of the terrain preserved, as nearly as possible" (49 NY Jur 2d, Easements § 128) and "to insist that the easement enjoyed shall remain substantially as it was at the time it accrued, regardless of whether benefit or damage will result from a proposed change" (*Myers v Baker*, 45 App Div 26, 29 [1899]). Defendants were not permitted to "materially increase the burden of the servient estate[s] or impose new and additional burdens on the servient estate[s]" (*Solow v Liebman*, 175 AD2d 120, 121 [1991]). Thus, the court properly found that it was required to strike a balance between the parties' competing interests and to hold defendants liable to plaintiffs to the extent that their actions exceeded their rights under their easements (*see Alford v Niagara Mohawk Power Corp.*, 115 AD2d 924, 924-925 [1985], *lv denied* 67 NY2d 607 [1986]).

The extent of an easement is determined by the language of the grant and, when necessary, by any circumstances that tend to show the parties' intent (*see Raven Indus., Inc. v Irvine*, 40 AD3d 1241, 1242 [2007]). In an appeal from a determination after a bench trial, " 'we independently review the weight of the evidence and may grant the judgment warranted by the record, while according due deference to the trial judge's factual findings particularly where . . . they rest largely upon credibility assessments' " (*Chase Manhattan Bank v Douglas*, 61 AD3d 1135, 1136 [2009], quoting *Martin v Fitzpatrick*, 19 AD3d 954, 957 [2005]; *accord Sherwood v Brock*, 65 AD3d 738, 738-739 [2009]).

Defendants argue that Supreme Court erred in holding them liable for damage caused by their failure to follow plans they had obtained and to install certain erosion-control measures during their work. They assert that their work in repairing the road was within their rights under the easement and did not require them to reengineer or improve the road. The evidence strongly supports the court's determination that defendants' work destroyed or removed land features that had previously served as erosion controls with the result that rocks, gravel, and earth were repeatedly washed off the roadway and into the

adjacent stream. There was evidence that these intrusions, in addition to rocks, gravel, and logs that defendants directly pushed into the stream during their work, altered the terrain of the Lopez property and caused flooding on plaintiffs' properties. According due deference to Supreme Court's factual findings, we agree that defendants exceeded the scope of their easements and that they were obligated to prevent further harm to plaintiffs' properties by installing erosion-control measures at least as effective as those they had removed.

Defendants contend that given the three historical storm events, in which the Delaware River repeatedly escaped its banks and flooded plaintiffs' land in some of the same areas damaged by defendants' work, their actions cannot be said to be a proximate cause of plaintiffs' damages. We agree with Supreme Court that defendants were not entitled to an "act of God" affirmative defense because they did not show that the storms and river flooding were "the sole and immediate cause[s] of the injury and that they were free from any contributory negligence" (*Tel Oil Co. v City of Schenectady*, 303 AD2d 868, 873 [2003] [internal quotation marks and citations omitted]). "[W]here there are several possible causes of injury, for one or more of which the defendant is not responsible, the plaintiff cannot recover without proving that the injury was sustained wholly or in part by a cause for which the defendant was responsible" (*Brooks v New York State Thruway Auth.*, 73 AD2d 767, 768 [1979], *affd* 51 NY2d 892 [1980]). The court was entitled to credit the extensive evidence presented by plaintiffs, including the testimony of their engineer, that defendants' actions caused damage independent of the harm that would have otherwise been caused by the flooding of the river.

Defendants also object to Supreme Court's determination that their actions destroyed the water supply to the Bierhorst residence, contending that plaintiffs introduced no direct evidence that connects defendants' actions to such damage. Negligence may be proven by circumstantial evidence that a defendant's actions were the "more likely or more reasonable" cause of a plaintiff's injuries (*New York Tel. Co. v Harrison & Burrowes Bridge Contrs.*, 3 AD3d 606, 608 [2004] [internal quotation marks omitted]). Gene Bierhorst's testimony that the water supply abruptly stopped working after defendants bulldozed rocks and sediment into the stream provided a basis on which the court could reasonably find that defendants' actions were more likely to have damaged the water supply than any other cause (*see id.* at 608-609). For the same reasons, the court's conclusion that defendants' activities were the more

likely cause of damage to the Bierhorst cesspool was sufficiently supported by circumstantial evidence, including the testimony of several witnesses that defendants drove heavy equipment over or near the cesspool and partially exposed it during their excavations, and that the exposed cesspool was damaged and leaking, as well as the testimony of plaintiffs' engineer as to various problems with the cesspool resulting from defendants' work.

Further, with regard to the Bierhorst water supply, defendants argue that the individual damage award to the Bierhorsts for the cost of installing a well was erroneous because the system that previously supplied water to the residence consisted of water pipes rather than a well. We disagree. The proper measure of damages for permanent harm to real property is the lesser of the cost of restoration or the decline in market value (*see Jenkins v Etlinger*, 55 NY2d 35, 39 [1982]). Plaintiffs established that defendants' actions disrupted the water supply to the Bierhorst residence and that the appropriate means of restoring the supply was by installing a well. They provided evidence of the cost of such restoration. Defendants introduced no evidence in rebuttal to show that the water supply could be restored less expensively by installing water pipes or that such an installation would be feasible or to show that a lesser sum than the amount claimed by plaintiffs would sufficiently compensate them for the lost water supply (*see id.*; *Alford v Niagara Mohawk Power Corp.*, 115 AD2d at 925).

Supreme Court erred in finding defendants liable for damage to plaintiffs' properties resulting from the removal of the concrete dam that had previously been located on the Kilcommons' property (*see Lake Claire Homeowners Assn. v Rosenberg*, 215 AD2d 446, 447-448 [1995], *lv dismissed* 86 NY2d 838 [1995]). The record supports the conclusion that removal of the dam did not directly cause the damage at issue here; rather, its removal returned Kilcommons' land to its natural condition, providing no flood protection against the storms that followed (*see Bennett v Cupina*, 253 NY 436, 439 [1930]; *Friedland v State of New York*, 35 AD2d 755, 756 [1970]). Because defendants had no duty to maintain the dam for the benefit of plaintiffs, they are not legally liable for the removal (*see Bird v Trust Co. of N.J.*, 234 AD2d 812, 814 [1996]; *Lake Claire Homeowners Assn. v Rosenberg*, 215 AD2d 446, 447-448 [1995]). However, although the court found that defendants' removal of the dam had worsened the harm to plaintiffs' properties, it noted explicitly that it could not order defendants to replace the dam, and did not award any damages specifically linked to its

removal. Defendants argue that the joint award to plaintiffs should be reduced because the joint damage award was based on an estimate of $150,000 for general restoration work provided by plaintiffs' engineer, which included $20,000 for repairs to the dam. We disagree, as the court specified that the joint award represented the cost of repairing the roadway, embankment, and stream banks on plaintiffs' properties, without mentioning the dam.

Defendants further argue that the joint award is duplicative of several of the individual awards to plaintiffs but, as previously noted, Supreme Court specifically indicated the items covered by the joint award. Further, the separate awards addressed the individually owned property. No sound basis appears for a conclusion that any of the individual awards duplicate the joint award.

Nonetheless, there are problems with the joint award. As noted above, the measure of permanent damage to real property is the lesser of the diminution in the property's value or the cost of restoration, and plaintiffs bore the burden to prove their damages by at least one of these measures (*see Jenkins v Etlinger*, 55 NY2d at 39; *McDermott v City of Albany*, 309 AD2d 1004, 1006 [2003], *lv denied* 1 NY3d 509 [2004]). Although plaintiffs presented extensive evidence demonstrating the damage to their properties and the estimated cost of its repair, the testimony did not specifically address the items covered by the joint award—that is, the repair of the embankment, roadway, and streambanks within the boundaries of plaintiffs' properties in a manner consistent with the plans obtained by defendants. Thus, the evidence does not support a determination that $150,000 is an accurate measure of joint damage. Given the lack of clarity in the record, the award for the damages specified by Supreme Court in this respect is insufficiently supported. "Where damages are shown to exist but proof as to amount is insufficient, remand for a new trial as to those damages is appropriate" (*Manniello v Dea*, 92 AD2d 426, 429 [1983] [citations omitted]; *see Jerry B. Wilson Roofing & Painting v Jobco-E. R. Kelly Assoc.*, 128 AD2d 953, 955 [1987], *lv denied and dismissed* 70 NY2d 828 [1987]). The matter must therefore be remitted for this determination.

Finally, contrary to defendants' contention, plaintiffs need not be directed to spend any damages awarded to them for the repair of the lower portion on actual repairs to the roadway. "In a tort case, [c]ompensatory damages, whether general or special, serve to make good, so far as it is possible to do so in dollars and cents, the harm done by a wrongdoer" (*Scalp & Blade v*

*Advest, Inc.*, 309 AD2d 219, 225 [2003] [internal quotation marks and citations omitted]). As the dominant owners, defendants are responsible for maintaining and repairing the roadway and, in the absence of an agreement to do so, plaintiffs are not obligated to make repairs or contribute to their cost (*see Tagle v Jakob*, 275 AD2d 573, 574 [2000], *affd* 97 NY2d 165 [2001]). We therefore disagree that awarding money damages to plaintiffs representing the value of proper repair of the roadway crossing their properties constitutes a double recovery, whether or not they elect to make the repairs.

Mercure, J.P., Spain and Rose, JJ., concur; Kane, J., not taking part. Ordered that the judgment is modified, on the law, without costs, by vacating the joint award to plaintiffs for the repair of the portion of the easement and bordering embankment and stream banks on their properties; matter remitted to the Supreme Court for a new trial on the issue of the amount of joint damages to be awarded to plaintiffs for those repairs; and, as so modified, affirmed.