Hagopian v Karabatsos (2018 NY Slip Op 00052)





Hagopian v Karabatsos


2018 NY Slip Op 00052


Decided on January 4, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 4, 2018

524226

[*1]ROBERT G. HAGOPIAN et al., Respondents,
v
CHRIS KARABATSOS et al., Defendants, and JAMES F. WILLIS et al., Appellants.

Calendar Date: November 13, 2017

Before: Garry, P.J., Clark, Mulvey, Aarons and Rumsey, JJ.


Rupp Baase Pfalzgraf Cunningham LLC, Buffalo (Phillip A. Oswald of counsel), for appellants.
Graff Law, LLC, Kingston (Sharon A. Graff of counsel), for respondents.


Clark, J.

MEMORANDUM AND ORDER
Appeals (1) from an order of the Supreme Court (Cahill, J.), entered July 19, 2016 in Ulster County, upon a decision of the court in favor of plaintiffs, and (2) from the amended judgment entered thereon.
The gravamen of this property dispute concerns the rights and interests of the parties in Goldrick's Landing Road (hereinafter the subject road), which runs from Ulster Landing Road easterly to the boundary of plaintiffs' property (the dominant estate), which borders the Hudson River in the Town of
Ulster, Ulster County. Defendants own property along the north and south side (the servient estate) of the subject road located immediately to the west of plaintiffs' property. In a 1959 agreement, an easement was created by defendants' predecessor in favor of plaintiffs' predecessor that was binding on the parties' successors and provided them with general access and use over the subject road for access to the Hudson River and to the docks located thereon. In 2004, plaintiff Robert G. Hagopian, without the consent of defendants, began performing excavation [*2]work on a portion of the subject road (hereinafter the subject property)[FN1]. As a result, defendants commenced an action and successfully obtained a preliminary injunction enjoining Hagopian from performing further work on the subject property. On appeal, this Court found, in relevant part, that the injunction was proper (Karabatos v Hagopian, 39 AD3d 930, 932 [2007]). Subsequently, the parties agreed to submit the case to arbitration, and the arbitrator determined that, under the 1959 agreement, Hagopian was required to obtain consent from defendants before performing any work on the subject road and that Hagopian breached the agreement by performing work on the subject property without first requesting defendants' consent. The arbitrator did not require Hagopian to restore the property, but instead awarded $32,200 in damages to defendants Chris Karabatsos and Georgia Karabatsos [FN2]. Upon motion, Supreme Court (Connolly, J.) subsequently confirmed the arbitrator's decision pursuant to CPLR 7510.
Plaintiffs then commenced the instant action, seeking, among other things, a declaration that the consent clause contained in the 1959 agreement was void and reformation of the agreement to permit Hagopian free and unobstructed access to his lands and to permit otherwise lawful repair to the subject road and subject property without consent. Defendants asserted that plaintiffs' action is barred by res judicata and collateral estoppel based upon the arbitration decision and that any condition that denies plaintiffs free and unobstructed access to the subject road was created by Hagopian. Following a bench trial, Supreme Court (Cahill, J.) held, among other things, that res judicata and collateral estoppel did not apply, that relocation of the easement was acceptable if necessary to ensure free and unobstructed access, that plaintiffs' rights were not restricted by past use of the easement, that Hagopian was solely responsible for maintenance and repair of the entire easement and that no consent requirement attached to the duty to maintain and repair. Defendants James F. Willis and Robin L. Willis now appeal.
We affirm. Initially, we reject the Willises' contention that the claims in this action are precluded by principles of res judicata or collateral estoppel. It is well-settled that the doctrines of res judicata and collateral estoppel apply to arbitration awards and will bar subsequent litigation of an issue or claim already decided in arbitration (see Rembrandt Indus. v Hodges Intl., 38 NY2d 502, 504 [1976]; Rozewski v Trautmann, 151 AD3d 1945, 1946 [2017]; Matter of Pinnacle Envt. Sys. [Cannon Bldg. of Troy Assoc.], 305 AD2d 897, 898 [2003]; Monroe v Providence Washington Ins. Co., 126 AD2d 929, 929 [1987]). However, where an issue not determined by an arbitrator is the subject of a subsequent action, the arbitration award is not a bar to that action or the claims raised therein (see Rembrandt Indus. v Hodges Intl., 38 NY2d at 504; Lopez v Parke Rose Mgt. Sys., 138 AD2d 575, 577-578 [1988]; Central Water Heater & Sales Corp. v Adler, 128 AD2d 665, 667 [1987]). As such, our inquiry necessarily turns to the scope of the parties' arbitration, which reveals that the relevant issues before the arbitrator and the [*3]scope of the arbitration award were limited to the ownership and location of the subject road and whether and to whom consent was required to be given prior to undertaking any maintenance and/or repair work on the subject property. At the conclusion of the arbitration proceeding, the arbitrator ruled that "mutual consent" was required if any "work on the road was to be performed," that Hagopian breached the 1959 agreement by failing to obtain consent prior to commencing work on the subject property in 2004 and that the proper amount of damages was the value of the rock and soil excavated from the subject property.
In contrast, the genesis of the claims in the present action stem from conduct that occurred subsequent to the arbitrator's decision and concern matters that are beyond the scope of the issues ruled upon by the arbitrator. Specifically, in a June 2009 letter, Hagopian sought consent from defendants to perform certain repairs to the subject property. In his request, Hagopian, among other things, detailed the design for the repairs, averred that the design would bring the road into compliance with safety standards for private roads and explained that such repairs were necessary to permit year-round use of the subject road and access to his property [FN3]. Inasmuch as defendants failed to provide consent to the requested repairs, Hagopian now challenges, among other things, whether consent is required to make repairs that are necessary to permit free and unobstructed access to his property and whether his proposed repairs are in fact reasonable and necessary. Given that the issues and claims raised in this action concern matters that were not determined by the arbitrator, the arbitration award is not a bar to this action under principles of either res judicata or collateral estoppel (see Saratoga Schenectady Gastroenterology Assoc., P.C. v Bette & Cring, LLC, 83 AD3d 1256, 1258 [2011]; Matter of Melber v New York State Educ. Dept., 71 AD3d 1216, 1217 [2010]; State of New York v Cities Serv. Co., 180 AD2d 940, 941 [1992]; compare Matter of Feldman v Planning Bd. of the Town of Rochester, 99 AD3d 1161, 1162-1164 [2012]; Matter of Pinnacle Envt. Sys. [Cannon Bldg. of Troy Assoc.], 305 AD2d at 898).
Turning to the merits, the Willises contend that Supreme Court erred in holding that Hagopian could exclusively perform maintenance and repair of the subject property, without their consent, that was reasonable and necessary to facilitate access to his lands. It is well-settled that "[e]asements by express grant are construed to give effect to the parties' intent, as manifested by the language of the grant" (Dowd v Ahr, 78 NY2d 469, 473 [1991]; see Rosen v Mosby, 148 AD3d 1228, 1230 [2017], lv dismissed ___ NY3d ___ [Dec. 14, 2017]; Boice v Hirschbihl, 128 AD3d 1215, 1216 [2015]). Here, the 1959 agreement granting the easement expressly contemplated the possibility of "replacement or realignment of [the] right of way or . . . dedication for public use" and provided, in pertinent part, that "the cost of any such realignment or change [to the subject road] if and when made shall be borne by the person requesting the same. The maintenance and repair of said rights of ways over both parcels however shall be at the exclusive expense and responsibility of the party of the [dominant estate]; said right of way shall at all times reasonably permit free and unobstructed access from the aforesaid County Road to the Hudson River and the dock or docks located thereon." In our view, the plain language of the agreement unambiguously provides that Hagopian, as owner of the dominant estate who made the request to perform work on the subject property, is responsible for performing any maintenance and repair of the subject road and for bearing the cost of that work. The agreement [*4]also guarantees Hagopian with, "at all times[,] . . . free and unobstructed access" to his property along the Hudson River. Therefore, notwithstanding defendants' lack of consent to the proposed maintenance and repair work, we find that the agreement manifests an intent to provide Hagopian with, under these circumstances, the right to make reasonable and necessary repairs to the subject property for the limited purpose of enabling him to access his property at all times (see Missionary Socy. of Salesian Congregation v Evrotas, 256 NY 86, 90-91 [1931]; Gates v AT & T Corp., 100 AD3d 1216, 1218-1220 [2012]; Lopez v Adams, 69 AD3d 1162, 1163-1164 [2010]; Bilello v Pacella, 223 AD2d 522, 522 [1986]; compare Minogue v Kaufman, 124 AD2d 791, 792 [1986]).
As to whether the evidence at trial established that the proposed maintenance and repairs were reasonable and necessary, we accord "due deference to the trial court's factual findings and credibility determinations" (Latham Land I LLC v TGI Friday's Inc., 124 AD3d 957, 958 [2015] [internal quotation marks, brackets and citations omitted]; see Davis v CEC, Inc., 135 AD3d 1049, 1050 [2016], lv denied 27 NY3d 904 [2016]; Medina v State of New York, 133 AD3d 943, 944 [2015], lv denied 27 NY3d 905 [2016]). Here, Supreme Court credited the trial testimony of Hagopian and the expert witnesses establishing that the proposed improvements to the subject property were reasonable and necessary to provide Hagopian with safe, free and unobstructed year-round access to his property and that the proposed work would have no negative impact on the value of defendants' property or otherwise discourage improvement of the subject property in any way (see Lewis v Young, 92 NY2d 443, 451-452 [1998]; Lopez v Adams, 69 AD3d at 1163-1164; Bilello v Pacella, 223 AD2d at 522)[FN4]. As such credibility determinations are supported by the record, we will not disturb them.
Nor are we persuaded by the Willises' contention that Hagopian's proposed maintenance and repair of the subject property substantially changes the location of the easement or that his past use of that easement fixed its exact location (see Lewis v Young, 92 NY2d at 452-453; MacKinnon v Croyle, 72 AD3d 1356, 1357-1358 [2010]). Finally, given the plain language of the easement requiring Hagopian to perform and bear the cost of any maintenance and repair work of the subject road, Supreme Court properly ordered James Willis to abstain from interfering with maintenance and repair of the subject property. Accordingly, Supreme Court's judgment was proper in all respects.
We have considered defendants' remaining contentions and find them to be without merit.
Garry, P.J., Mulvey, Aarons and Rumsey, JJ., concur.
ORDERED that the order and amended judgment are affirmed, with costs.



Footnotes

Footnote 1: The subject property is a 485-foot section of the eastern portion of the subject road that extends east from the intersection of the subject road and Goldrick's Court, past property owned by defendants James F. Willis and Robin L. Willis and to the western bounds of Hagopian's nine-acre Hudson River property. Plaintiffs also own a .29-acre residential parcel of property that is along the subject road and that is situated between the property owned by the Willises and the property owned by Hagopian.

Footnote 2: In 2011, the Karabatsoses conveyed the subject property to the Willises.

Footnote 3: Significantly, beginning in summer 2009, James Willis performed work on the subject road without Hagopian's consent by raising the elevation of a segment of that road, and such work continued after Hagopian informed James Willis in writing of his objection to the work. 

Footnote 4: The record reflects that the excavation work was done to facilitate year-round access to Hagopian's property and residence. Defendants do not use the subject property to access their lands, and the subject property is the sole means by which plaintiffs can access their property.